380 So.2d 1075 (1980)
John L.S. SNEAD, As Executor of the Estate of Kathryn W. Snead, Deceased, et al., for and On Behalf of W.W.C., Inc., Etc., Appellants,
v.
UNITED STATES TRUCKING CORPORATION, a Corporation, and W.W.C., Inc., a Corporation, Appellees.
No. KK-203.
District Court of Appeal of Florida, First District.
February 18, 1980.
Rehearing Denied April 2, 1980.
*1076 Harold B. Wahl, of Wahl & Gabel, Jacksonville, for appellants.
E. Earle Zehmer and Charles P. Pillans, III, of Bedell, Bedell, Dittmar & Zehmer, Jacksonville, for appellees.
BOOTH, Judge.
This is an appeal from a final judgment in a stockholders derivative suit seeking rescission of a written lease extension agreement executed April 13, 1972 between W.W.C., Inc., a Florida corporation, and U.S. Trucking Corporation, a New York corporation. The cause was tried before the judge without a jury, and judgment entered denying the relief prayed for, and dismissing the suit with prejudice.
The following facts, as found by the trial court, are essentially undisputed:
"The agreement in controversy extended for an additional 4 1/2 years in the term of an existing 30-year lease between the parties which original lease had been executed on September 1, 1966. The lease premises consisted of a warehouse owned by the lessor, W.W.C., Inc., and said warehouse was the only asset of said W.W.C., Inc. There is no controversy concerning the execution of the original 30-year lease or concerning the terms and conditions of that lease. At the time of the negotiations for and the execution of the contested lease extension agreement Rex Wiesenfeld (now deceased) was the owner of 50% of the stock of W.W.C., Inc. and was the President, Treasurer and a Director of said corporation and had also since September of 1966 been employed by U.S. Trucking Corporation as the warehouse manager of said warehouse. At all such times Kathryn Wiesenfeld Snead (who is also now deceased and who was Rex Wiesenfeld's sister) was the owner of the remaining 50% of the corporate stock of W.W.C., Inc. and was the Vice President and a Director of said corporation and Arthur W. Milam as Secretary and a Director of said corporation.
* * * * * *

*1077 "Subsequent to the execution of the original lease the said Rex Wiesenfeld (now deceased) negotiated with United States Trucking Corporation concerning a lease to that company of another warehouse which Rex proposed to construct across the street from the W.W.C., Inc. warehouse. Pursuant to those negotiations Rex formed a new corporation (Zorex, Inc.), became an officer, director and stockholder of that corporation and that corporation took title to real property across the street from the W.W.C., Inc. warehouse and constructed thereon another warehouse which was leased to United States Trucking Corporation for a 30-year term expiring February 28, 2001. This lease also imposed upon the lessee the obligation to pay, in addition to the specified rentals all taxes, insurance and maintenance on the demised premises, but the rentals under the Zorex lease compute to approximately 74 cents per square foot as compared to approximately 38 cents per square foot in the W.W.C., Inc. lease. Kathryn Wiesenfeld Snead (now deceased) was not a stockholder, officer or director in Zorex, Inc. and was not consulted concerning the business of that corporation.
"The lease extension agreement of the W.W.C., Inc. lease, which is here in controversy, extends the term of the W.W.C., Inc. lease so that it will expire on February 28, 2001 and coincide with the expiration date of the Zorex lease. Kathryn Wiesenfeld Snead (now deceased) was not consulted concerning the extension of the W.W.C., Inc. lease, was not advised of any negotiations concerning such extension, and did not learn of the lease extension agreement until shortly before Rex Wiesenfeld's death on August 12, 1974, over two years after the lease extension agreement had been executed.
* * * * * *
"Arthur W. Milam, who signed the contested W.W.C., Inc. lease extension agreement as the Secretary of W.W.C., Inc., is an attorney who represented W.W.C., Inc. on legal matter and also acted as an officer (Secretary) and a director of that company. At all times during the negotiation for and execution of both the Zorex lease and the W.W.C., Inc. lease extension agreement Mr. Milam was also an officer and director of Zorex, Inc. For some time prior to the negotiations for and execution of the W.W.C., Inc. lease extension agreement, the said Arthur W. Milam had performed legal services in the Jacksonville area for United States Trucking Company on a "case by case" basis and not on a regular retainer basis.
* * * * * *
"At all times during the negotiations with United States Trucking Company for the execution of the Zorex lease and at the time of executing that lease, the said Rex Wiesenfeld was an officer, director and a stockholder of Zorex, Inc. and was also employed on a salary basis by United States Trucking Company as the warehouse manager of the W.W.C., Inc. warehouse, and was so employed at all times during the negotiations for and the execution of the W.W.C., Inc. lease extension agreement which is here in controversy. Rex Wiesenfeld signed the contested W.W.C., Inc. lease extension agreement as President of W.W.C., Inc."
Under the foregoing facts, as found by the trial court, Wiesenfeld was: (1) owner of 50 percent of the stock of W.W.C., Inc.; an officer and director of W.W.C., Inc.; (2) salaried employee of U.S. Trucking Company; and (3) officer, director and stockholder of Zorex, Inc. In April of 1972 Wiesenfeld executed a lease extension agreement extending the existing lease on the W.W.C. warehouse (the sole asset of that corporation) at 38 cents per square foot (the same rental as under the 1966 original lease). The term of the lease extension is to commence in 1996 and expire on February 28, 2001, the same date as the expiration of the lease on the warehouse owned by Zorex, which lease paid 74 cents per square foot. *1078 Both leases were identical triple-net leases[1] except for the discrepancies in the amount of rental. The warehouses were located across the street from each other, and the trial court further found that "the fair rental value of the W.W.C., Inc. warehouse was equal to that of the Zorex, Inc. warehouse across the street ..."
It is also undisputed, as found by the trial court, that one Arthur W. Milam, who signed the lease extension as secretary of W.W.C., Inc., was: (1) officer and director of W.W.C., Inc.; (2) officer and director of Zorex, Inc.; and (3) attorney in the Jacksonville area for U.S. Trucking, though he testified that his representation of U.S. Trucking was only on a case-by-case, rather than a retainer, basis.[2]
Based on the facts, the trial court concluded:
1. There was no conflict of interest on the part of Mr. Milam, who "was acting solely on behalf of W.W.C., Inc. and free from any undue influence or pressure on the part of U.S. Trucking."
2. That "with reference to Rex Wiesenfeld's `triple role' as (1) local warehouse manager for U.S. Trucking Company of the W.W.C., Inc. warehouse, (2) as president and a director of W.W.C., Inc. and (3) as an officer and director of Zorex, Inc., there has been no showing that any undue influence whatever was exerted by U.S. Trucking Company to cause Wiesenfeld to execute the lease extension agreement."
3. That the rental at 38 cents per square foot of the W.W.C. warehouse as opposed to the 74 cents per square foot of the Zorex warehouse across the street was below fair rental value, but was an exercise of "business judgment" and "continued [a] fair return on investment" to W.W.C. stockholders.
4. That the lease extension "was not detrimental" to W.W.C., or its stockholders and that "the plaintiff has failed to prove that such action was taken or induced as the result of fraud, deceit, overreaching or any other improper motive on the part of either Rex Wiesenfeld (now deceased), Arthur W. Milam or U.S. Trucking Company."
It is not the function of the Appellate Court to retry the facts as found by the trial court sitting without a jury. The trial court's order, however, fails to consider the traditional principles of law applicable where persons occupying a fiduciary relationship enter into a transaction involving property intrusted to their care under circumstances of conflicting self-interest: The trial court's order does not consider: (1) the fiduciary duty owed by Wiesenfeld and Milam to W.W.C., Inc.; and (2) the principles of rescission applicable to a third party receiving the benefit in other than an arms-length transaction. It is not necessary that actual fraud, misrepresentation or unfairness of the transaction be established in such circumstances. The transaction is voidable at the option of the party to whom the fiduciary duty is owed.
The relationship of a director and of an officer to the corporation and its stockholders is that of a fiduciary.[3] Further aspects of this universally accepted rule are stated in treatises as follows:
"A director's duties being trust duties or in the nature of the duties of a trustee toward his cestui que trust, his acts are subject to be tested by the rules governing he relation of a trustee to his cestui que trust. The duties result from the nature of the employment, and without any stipulation to that effect. He is bound to act with fidelity, the utmost good faith, and with his private and personal interests subordinated to his trust duty whenever the two come in conflict. *1079 Courts of equity must enforce strict compliance with these rules."[4]
.....
"A director cannot place himself in a position where his individual interest clashes with his duty to his corporation, and there is authority that equity will grant relief where it appears that directors have made in behalf of the corporation contracts which favor their personal interests.
"Actual injury is not the principle upon which the law proceeds in condemning such transactions. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. Although the contractors may, as members of the board, have acted honestly and solely with reference to the corporate interest, yet, if they have acted otherwise, they occupy a position which puts it in their power to conceal the evidence of the facts and to defy detection. If, therefore, such transactions were to be held valid until shown to be fraudulent or corrupt, the result, as a general rule, would be that they must be enforced in spite of fraud or corruption."[5]
.....
"If a third person joins with a corporate officer in dealing with the corporation, with knowledge that he is such officer, the contract may be set aside as to him as well as the corporate officer, and cannot be enforced by either party thereto because they are in pari delicto."[6]
It is clear that these rules apply even without the degree of inadequacy of compensation here and disparity between the rental of the substantially identical warehouses. The trial court in the instant case was unable to make a finding that the transaction was for adequate compensation. Instead, the court rationalized that the lease extension was "not detrimental" to W.W.C. and its stockholders because it simply "continued the same return" as that agreed to in 1966. The court further rationalized that the owner of the older warehouse needed only half as much rental to recoup the investment and this was an exercise of "business judgment." This opinion is particularly inappropriate in a derivative suit where complaining stockholders were not informed, and did not have the opportunity to exercise "business judgment" to accept half the rentals received across the street. Because this was not an arms-length transaction, there was no enforcement of W.W.C.'s bargaining position under the 1966 lease which gave U.S. Trucking an option to extend for ten years but at a higher rental rate, allowing for inflation.
The question remains as to whether Florida Statutes, § 692.01, as amended effective January 1, 1972, precludes rescission of this *1080 transaction. That statute, in effect on the date of the formal execution of the lease here, provides:
Fla. Stat. § 692.01: "Any corporation may execute instruments conveying, mortgaging or affecting any interest in its lands by instruments sealed with the common or corporate seal and signed in its name by its president or any vice-president or chief executive officer... . No corporate resolution need be recorded to evidence the authority of the person executing the deed, mortgage, or other instrument for the corporation, and an instrument so executed shall be valid whether or not the officer signing for the corporation was authorized to do so by the board of directors in the absence of fraud in the transaction by the person receiving it. In cases of fraud, subsequent transactions with good faith purchasers for value and without notice of the fraud shall be valid and binding on the corporation."
The clear intent and purpose of Florida Statutes, Section 692.01, as amended 1972, is to allow third parties without knowledge of intracorporate disputes, fraud or misrepresentations, to enter into business transactions of the type specified by the statute with confidence as to the transaction's validity and without the need to verify the actual authority of the officer executing the agreement. The statute was not intended to permit a "raid" on corporate assets and breach of fiduciary duties where no bona fide third party purchaser is involved.
We further note a substantial question here as to whether the agreement between U.S. Trucking and Wiesenfeld preexisted the effective date of the statute, January 1, 1972. The Zorex lease was executed March 20, 1970; and, on the same day, the president of U.S. Trucking wrote the following letter to Wiesenfeld, as president of W.W.C., Inc.:
"As you know, the undersigned has today executed a lease (the `New Lease') with Zorex, Inc., covering premises on the south line of West 33rd Street, Jacksonville, Florida, for an original term of 30 years, to commence on completion of the construction of a warehouse building and other improvements. It is our desire that both leases have the same expiration date, and you have indicated a willingness to accommodate such desire. Accordingly, it is understood and agreed between us that promptly following the ascertainment of the commencement date of the New Lease, you will execute and deliver to the undersigned an agreement extending the original term of the 1966 Lease [W.W.C. lease] so that it will have the same expiration date as the New Lease [Zorex lease]." (emphasis supplied)
Thereafter, the Zorex warehouse was completed, and that lease became effective on March 28, 1971, with occupancy by U.S. Trucking. In compliance with the "understanding" in the above-quoted letter, the lease extension agreement was drafted in 1971, as appears from the typed documents of record here. Formal execution of the lease extension was delayed until the following year, after the effective date of § 692.01. The date of formal execution is of little consequence, however, since arrangements had been made between U.S. Trucking and Wiesenfeld and agreement reached at least a year previously.
The trial court found that "from a general business standpoint" U.S. Trucking wanted the W.W.C. lease extended but that the extension was not "a condition insisted upon" by U.S. Trucking. It is not necessary that there be evidence that U.S. Trucking "insisted" on the W.W.C. lease extension in order to go through with the Zorex lease. The record here and the trial court's findings establish that the transactions were inter-related. Wiesenfeld and Zorex, Inc. secured a favorable thirty-year lease of the Zorex warehouse by "throwing in" the four and one-half year extension at less than fair rental of the W.W.C. warehouse. Based on this rather overwhelming evidence, the trial court was unable to make the finding that the W.W.C. lease extension was an arms-length transaction, or that U.S. Trucking was a bona fide purchaser. The lease extension is therefore voidable at the election of W.W.C., Inc.
*1081 Accordingly, the judgment below is REVERSED and cause remanded for proceedings consistent herewith.
MELVIN, WOODROW M. and VANN, HAROLD R., Associate Judges, concur.
NOTES
[1] Triple-net lease: The lessee is obligated to pay all taxes, insurance, costs and maintenance on the demised premises.
[2] Testimony of Arthur Milam (T. 11):

"Q Have you and your firm, since 1966, been the local Jacksonville attorney for U.S. Trucking for whatever business they had in Jacksonville for local ...
"A As far as I know, it is true."
[3] 19 C.J.S. Corporations § 761, at 103, 107.
[4] 19 C.J.S. Corporations § 761, at 105, 106; Thompson on Corporations, § 1328, at 799 (3rd ed. 1927):

"No principle in the law of corporations is founded on sounder reasons, or more surely settled, than the principle that the directors, trustees, or other officers of a corporation, who are intrusted with its interests, and occupy a fiduciary relation to it, will not be allowed to contract with the corporation, directly or indirectly, or to sell property to it or purchase property from it, where they act both for the corporation and for themselves. In such a case, the transaction is, at the very least, voidable at the option of the corporation; and it may be avoided and set aside, or affirmed and any profits recovered, without proof of actual fraud or of actual injury to the corporation.
* * * * * *
"In purchasing or selling property he cannot reserve a benefit or reap any profit to himself or a firm with which he may be connected without an abuse of the trust and confidence reposed in him by the corporation. The law will enforce fidelity on the part of the person who acts for others, by imposing upon him a disability either partial or complete, to deal in his own behalf or for his own private interests or profit in respect to a matter involving such trust or confidence."
[5] 19 Am.Jur.2d, Corporations, § 1288, at 695; 3 Fletcher, Cyclopedia, Corporations, § 926, at 394.
[6] 3 Fletcher Cyclopedia, Corporations, § 947, at 432; 19 Am.Jur.2d Corporations, § 1290.