388 So.2d 587 (1980)
Henry R. SLINGERLAND, Jr. et al., Appellants/Cross-Appellees,
v.
Raymond HURLEY et al., Etc., Appellees/Cross-Appellants.
No. 79-51.
District Court of Appeal of Florida, Fourth District.
August 27, 1980.
Rehearing Denied October 24, 1980.
*588 Edna L. Caruso, West Palm Beach, and Gerald M. Wochna of Lavalle, Wochna, Rutherford, Maher & Truesdell, P.A., Boca Raton, for appellants/cross-appellees.
Jerry Oxner of Oxner & Brown, West Palm Beach, for appellees/cross-appellants.
LETTS, Chief Judge.
This appeal arises as the result of a written partnership agreement covering a real estate project which the project's managing partner used to further certain dealings intended to accrue only to his benefit (or that of his corporations) and not to the benefit of the remaining partners. We affirm in part and reverse in part.
When the real property in question was first purchased by the investors, the contract to purchase it did not disclose that $35,000 of joint partnership funds was to be used to pay off a prior debt long since owed by the managing partner to the seller. However, because that seller refused to conclude the transaction absent a satisfaction of said indebtedness, the Special Master found that the inflated expenditure of *589 $35,000 was a "necessary cost of doing business." His finding and recommendation were approved by the trial judge. We disagree.
We cannot dispute the factual finding that it was necessary to pay off the $35,000 in order to facilitate the purchase, but that does not excuse it and, so far as the managing partner is concerned, under the facts of this case, the end did not justify the means. In all dealings with those who place their faith and trust in any fiduciary, the latter's standard of conduct must equal that of Caesar's wife. Fuller v. Pierce, 109 So. 238 (Fla. 1926); Chipola Valley Realty Co. v. Griffin, 115 So. 541 (Fla. 1927); Willis v. Fowler, 136 So. 358 (Fla. 1931); Singletary v. Mann, 24 So.2d 718 (Fla. 1946); Lieberbaum v. Levine, 54 So.2d 159 (Fla. 1951). The obligation to pay an additional $35,000 for the purchase did not appear anywhere on the written contract of sale for the subject property and was nowhere included in the stated price. Moreover, as we have said, the $35,000 obligation was incurred by the managing partner before he ever entered into the agreement with the partnership investors. As such, he is obligated to the partnership for the full $35,000 which we hereby order him to repay forthwith.
Not content with the above, the managing partner also proceeded to sell off a portion of the partnership holdings (Carriage Hill II) to a purchasing corporation in which he and/or his wife were the majority stockholders. This partial sale was effected without a current market value appraisal of the land sold despite the fact that prior appraisals indicated the price paid was between $600,000 and $900,000 less than market value.
It is argued first that the sale was conducted without appraisal because of the existence of an emergency and lack of any other offers. However, our review of the record does not disclose any critical time shortage which would excuse noncompliance with such a basic and relatively easily obtainable requirement as a current appraisal especially when prior appraisals set the price higher.
It is also argued that the managing partner made no profit from this purchase and in fact lost the land purchased because of a later foreclosure. We are likewise unimpressed with this argument. The outcome is not merely controlled by whether or not a profit was made. The critical question is: Did he, the managing partner, pay full market value for the property on the date he purchased it? The trial court never answered this question although there is testimony that he did not. Accordingly, we hereby remand this cause to determine the market value of the property purchased by the managing partner and/or his corporation on the date of purchase. If he paid too little then he owes the partnership the difference between the purchase price and the market value on the date of sale because he cannot take in-house advantage of his co-partners. § 620.66, Fla. Stat. (1977). See also: Orlando Grove Co. v. Hale, 144 So. 674 (Fla. 1932); Snead v. U.S. Trucking Co., 380 So.2d 1075 (Fla. 1st DCA 1980); Liberbaum v. Levine, 54 So.2d 159 (Fla. 1951); Flight Equipment & Engineering Corp., 103 So.2d 615 (Fla. 1958); Restatement of Agency § 407.
We wish we could finally decide and not remand this case. As the Special Master said of one of the managing partner's corporation's, "... we are told ... that the books of that Company were scrambled beyond control." The late distinguished jurist Culver Smith observed of this controversy, which began in his division, this is a "career case" and the Special Master agreed adding, "it has been, is and will continue to be." The message is obvious and borne out by the voluminous record. This is really a grudge match. The appellant, who is an heir to the Slingerland percussion instrument fortune, insists that everyone must march to his choice of drummer while the operating partner believes he can play the Pied Piper of Hamlin and pipe all of his investors off any financial cliffs of *590 his choosing without accountability.[1] As we perceive it, both should face the music yet to be played in this unfinished symphony  more attorneys fees and costs.
There are many other points on appeal and cross-appeal, which concern themselves with a myriad of other irregularities, charges and counter-charges. However, after careful consideration of a vast and confusing record, we find no other reversible error and the final judgment is affirmed in all respects except as stated herein.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN ACCORDANCE HEREWITH.
MOORE and GLICKSTEIN, JJ., concur.
NOTES
[1] The Special Master has ordered an accounting which we affirm based on "total disregard for the need to account."