397 So.2d 1196 (1981)
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Petitioner,
v.
Marilyn O'SHEA and the Honorable E. Randolph Bentley, Respondents.
No. 80-2051.
District Court of Appeal of Florida, Second District.
May 6, 1981.
Bernard H. Dempsey, Jr. and Hal K. Litchford, of Dempsey & Slaughter, P.A., Orlando, for petitioner.
Jack P. Brandon, Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., Lake Wales, for respondent Marilyn O'Shea.
BOARDMAN, Judge.
Petitioner seeks a writ of certiorari to review an award of attorney's fees in the amount of $14,500.00 to counsel for respondent/defendant Marilyn O'Shea in an action arising from the alleged embezzlement of over 3.6 million dollars by the recently deceased *1197 Michael K. O'Shea. Petitioner/plaintiff asserts that there is no authority to support the trial court's order, which effectively compels the receivership estate to underwrite a defendant's defense in this litigation. We agree, grant the writ and quash the order of the trial court.
Michael K. O'Shea was the accounting manager of General Foods Corporation throughout the time period during which the embezzlement occurred. (Since this lawsuit began, O'Shea has died in Florida State Hospital in Chattahoochee.) On February 20, 1980, after discovery of the embezzlement, General Foods commenced a lawsuit seeking to impose a constructive trust and/or equitable lien on the proceeds of the embezzlement. O'Shea and his purported wife, appellee Marilyn O'Shea,[1] and their two minor children were all named defendants. The trial court issued a temporary injunction freezing all assets of Mrs. and Mrs. O'Shea on the date the suit was filed. On December 18, 1980, the Internal Revenue Service filed in the United States District Court a petition for removal of the state court action to the United States District Court. That action is now pending before the United States District Court, Middle District of Florida, Tampa Division.
On February 29, 1980, prior to the removal, upon application of General Foods, the trial court appointed a receiver pendente lite to collect and administer the assets of Michael K. O'Shea, Marilyn O'Shea, and their children. This order directed each of them to surrender all assets and to cooperate with the receiver.
Throughout the period of embezzlement, Marilyn O'Shea and the children were dependent solely on Michael K. O'Shea for their support. Mrs. O'Shea was not employed during this period, nor did she bring anything of value into the purported marriage. Consequently, it was necessary to freeze her assets and to impose a receivership over property commonly held in the names of Marilyn O'Shea and the children in order to effect a complete recovery of the proceeds of the embezzlement.
Marilyn O'Shea and the children received a cash living allowance from the receivership of $1,700.00 per month until October 1, 1980 when it was reduced to $700.00 per month. This allowance is in addition to her rent-free occupancy of the family residence, free use of the 1980 Oldsmobile automobile, and other benefits.
Until April 14, 1980, Mrs. O'Shea was represented by Glen Anderson, a Winter Haven attorney. He had agreed to represent her on a contingency basis. On or about April 14, 1980, however, Mrs. O'Shea terminated the services of Mr. Anderson and employed another attorney, Jack P. Brandon. At that time the injunction had been in effect for almost two months and the receiver had been administering the assets for some six weeks. Marilyn O'Shea voluntarily agreed to compensate her new counsel at the rate of $80.00 per hour. She subsequently petitioned the court for reimbursement of her attorney's fees and sought recompense directly from the receivership estate for expenses incurred in defending herself from the efforts to impose a constructive trust over assets she had enjoyed throughout her husband's alleged embezzlement.
On September 26, 1980, an evidentiary hearing on the attorney's fees was held. Mrs. O'Shea attempted to show that her defense of the cause somehow benefited the receivership estate and the adverse parties. She testified that she had "cooperated" with the FBI and the state prosecutor. She also testified that she had cooperated in disclosing the existence of bank accounts and had otherwise cooperated with the receiver and with General Foods. Finally, she admitted that she had only located one additional asset during the course of the receivership  a gold watch, which she turned over to the receiver prior to retaining Mr. Brandon. She opined that the watch had a value of $5,000.00 or $8,000.00.
*1198 After hearing, the trial court awarded Mrs. O'Shea attorney's fees, payable to Mr. Brandon's law firm, in the amount of $14,500.00, and costs of $792.17. The court stated: "I think there has been some benefit to the receivership from Mrs. O'Shea's cooperation and her counsel's cooperation. How much cannot be assessed."
The trial court's oral rulings were incorporated into a final, written order which was rendered on October 17, 1980.
Florida courts recognize the rule which permits the award of fees "from a fund or estate which has been benefited by the rendering of legal services." Estate of Hampton, 341 So.2d 759 (Fla. 1976). This doctrine is known as the "common fund rule." The operation of the rule has primarily been premised upon the following prerequisites:
1. The existence of a fund over which the court has jurisdiction and from which fees can be awarded;
2. The commencement of litigation by one party which is terminated successfully;
3. The existence of a class which received, without otherwise contributing to the lawsuit, substantial benefits as a result of the litigation;
4. The creation, preservation, protection or increase of the fund as a direct and proximate result of the efforts of counsel for that party;
5. A reasonable relationship between the benefit established and the fees incurred.
See Dawson, Lawyers and Involuntary Clients: Attorney's Fees From Funds, 87 Harv.L.Rev. 1597 (1975).
In the instant case, the trial court awarded costs and fees to Marilyn O'Shea during the pendency of the litigation. The court itself stated: "Liability has not yet been determined in this matter. Who is going to win has not yet been decided by the court." Under the common fund rule, the party requesting fees is seeking a pro rata contribution from other members of the class benefited by the litigation. Here, if Marilyn O'Shea prevails in some sense, she will receive a distribution from the estate. But there is no provision in the trial court's order that assures the deduction of a proportion of the amount of the cost of litigation from the benefits Marilyn O'Shea may finally obtain. Without this precaution she would be unjustly enriched by receiving "free legal counsel" from the other parties.
Another prerequisite to the operation of the common fund rule is legal causation between services rendered by the attorney and the benefits conferred on the estate or fund. As we noted in State Department of Citrus v. Griffin, 332 So.2d 54 (Fla. 2d DCA 1976), the right to an award of attorney's fees under the common fund rule is based on the theory that plaintiff's successful litigation confers on members of a class a substantial benefit in a fund. In Griffin, the plaintiffs argued that it was their litigation that pressured the Department of Citrus to amend a marketing order, thereby preserving a sixteen million dollar fund. This court reversed the trial court's award of fees, as the litigation did not benefit the class within the rationale of Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942).
Respondent O'Shea correctly states that Securities & Exchange Commission v. Capital Counsellors, Inc., 512 F.2d 654, 658 (2d Cir.1975), held that the issue of attorney's fees in a case such as the one at bar should be entrusted to the discretion of the trial judge. However, the court went on to quote from 2 Tardy, Smith on Receivers § 639, at 1779 (2d ed. 1920), as follows: "Ordinarily the services of an attorney employed by defendant to represent him in receivership proceedings are solely for his benefit and are not to be paid for out of funds brought into court for the benefit of plaintiff and other claimants against the defendant."
Here, there has not been successful litigation conferring on the members of the plaintiff class substantial benefit in a fund. It has not been shown that Marilyn *1199 O'Shea's present counsel has been in any way responsible for benefits accruing to the receivership. The only evidence that arguably shows a benefit to the receivership is that of Mrs. O'Shea's cooperation before she retained Mr. Brandon.
As Marilyn O'Shea's actions have not preserved, protected or increased the common fund, we hold that the trial court departed from the essential requirements of the law in awarding interim costs and fees to Marilyn O'Shea's attorney. We therefore grant the petition for certiorari and quash the trial court's order of October 17, 1980, providing for interim costs and attorney's fees for Mrs. O'Shea's attorney.
SCHEB, C.J., and CAMPBELL, J., concur.
NOTES
[1] It appears that Mr. O'Shea's marriage to respondent Marilyn O'Shea may have been a bigamous one and therefore invalid, although respondent was apparently completely unaware of this prior to the investigation of Mr. O'Shea's embezzlement.