480 So.2d 104 (1985)
Raymond S. HURLEY, Faye Hurley, Vista Builders, Vista Realty, P & H Seawall & Piling, Ltd., A.B. Hurley, Carl Paul, and Hurley Related Interests, Appellants/Cross Appellees,
v.
Henry H. SLINGERLAND, Jr., et al., Appellees/Cross Appellants.
Roger DAVIS and the Estate of William H. Davis, Appellants,
v.
Henry H. SLINGERLAND, Jr., Raymond S. Hurley, et al., Appellees.
Nos. 83-2756, 83-2799.
District Court of Appeal of Florida, Fourth District.
August 28, 1985.
As Amended on Denial of Rehearing January 15, 1986.
*106 Harry C. Carratt of Morgan, Carratt and O'Connor, P.A., Fort Lauderdale, for Hurley, et al.
LaValle, Wochna, Rutherford & Brown, P.A., Boca Raton, and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for Slingerland, et al.
William H. Pruitt of Pruitt & Pruitt, West Palm Beach, for Roger Davis and the Estate of William H. Davis.
Robert S. Levy of Law Offices of Robert S. Levy, P.A., West Palm Beach, for Charles P. Houston, court-appointed receiver for Carriage Hill Limited Partnership.
HERSEY, Chief Judge.
As a general partner in Carriage Hill Limited Partnership, appellant, Hurley, engaged in certain acts alleged to have accrued to his own self-interest to the detriment of the limited partner appellee Slingerland (and his successors in title) and the other general partners. Other facts are set out in a previous opinion of this court, Slingerland v. Hurley, 388 So.2d 587 (Fla. 4th DCA 1980). Many points are raised on appeal and cross appeal. We treat only those deemed significant.
Appellant's first point on appeal is stated thusly: "Whether the trial court erred in holding that the special master could not take additional evidence in valuing the property in Carriage Hill II and in refusing to accept the valuation of the property as set forth in the special master's report."
The master did take additional testimony, over objection, and determined that no self-dealing profit resulted from the sale. The trial court refused to accept this finding based in part upon that court's understanding of the extent of its authority on remand. The court ultimately concurred "with the Plaintiff, Slingerland, that the HURLEY interest, the managing partner paid too little, and therefore, owes" a certain sum as self-dealing profit. We are unable to tell for certain the basis for this ruling. It is clear that the court felt compelled only to answer the question posed by this court's previous opinion: whether Hurley paid full market value for the property. What is unclear is whether the trial court construed the language of that opinion as precluding the consideration of any evidence other than that already in the record. No such limitation was intended to be imposed on the trial court's discretion as to whether additional evidence was necessary to determine fair market value on the date of sale. We are therefore concerned that the court may have considered its discretion to be limited and that, but for that limitation, might have decided the issue differently. Accordingly, we reverse on this issue and remand to permit the trial judge either to confirm his finding that Hurley paid less than fair market value or to reconsider the issue with or without the taking of additional evidence as may seem appropriate.
We are not impressed by appellee's argument that appellant should be precluded from now arguing that there was no profit, having previously taken the position that whether there was a profit or not he was justified in selling the property to himself. The former is the issue that ultimately was tried and argued.
Appellant's Point IV questions the propriety of three awards of prejudgment interest:
(1) $620,000 in self-dealing profits on the Carriage Hill II property with interest from June 15, 1971;
(2) $117,411 in self-dealing profits on the sale of twenty-five lots with interest from December 3, 1975; and
(3) $85,278 in self-dealing profits with regard to seawall construction with interest from various dates (March through June 1973) as to separate portions of the award. Appellant's position is that since the above amounts were unliquidated until fixed by the trier of fact, prejudgment interest is inappropriate.
Although the general rule is that prejudgment interest may be awarded where damages are liquidated and may not be awarded where they are unliquidated, it *107 has been recognized that "in Florida the distinction between liquidated and unliquidated damages `has been substantially blurred.'" Bergen Brunswig Corp. v. State of Fla. Dep't of Health and Rehabilitative Services, 415 So.2d 765, 767 (Fla. 1st DCA 1982)(citation omitted), rev. denied, 426 So.2d 25 (Fla. 1983). Two tests have evolved in determining whether prejudgment interest may be awarded. The first test is that set forth in Town of Longboat Key v. Carl E. Widell & Son, 362 So.2d 719, 723 (Fla.2d DCA 1978), "that a claim is unliquidated when the amount of the damages cannot be computed except on conflicting evidence, inferences and interpretations." See also City of St. Petersburg v. Wall, 419 So.2d 1167 (Fla.2d DCA 1982). Stated another way, the claim is unliquidated if the amount is contested and is not finally fixed until determined by the trier of fact. Alarm Systems of Florida, Inc. v. Singer, 380 So.2d 1162 (Fla.3d DCA 1980). See also Whatley Equipment Co. v. Duster, 433 So.2d 539 (Fla. 3d DCA 1983). Under this test, a distinction is made between contesting the right to damages and contesting the amount, the claim being liquidated in the former case and unliquidated in the latter. Broward County v. Sattler, 400 So.2d 1031 (Fla. 4th DCA 1981).
The second test, espoused in recent years by the first district, purports to "[eliminate] the unwarranted disparate treatment of those litigants who contest liability only, and those who contest the measure of damages." Bergen Brunswig Corp., 415 So.2d at 767. That test is: "a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." Id. The Bergen case involved a fact situation similar to the instant case  a claim for misappropriation and misuse of funds arising out of a contractual arrangement. This court very recently adopted the same test and added that "the fact that there is an honest dispute whether there is an actual debt and, if so, the amount, does not render the claim unliquidated." Law v. Blue Lagoon-Pompano, Inc., 470 So.2d 33 (Fla. 4th DCA 1985).
The Florida Supreme Court has now settled the controversy. In Argonaut Insurance Company v. May Plumbing Company, 474 So.2d 212 (Fla. 1985), the court approved the Bergen Brunswig Corp. rule. Under that rule, the awards of prejudgment interest in the instant case were proper. Although the amounts were contested, the trial court's order fixed the amounts due as of specific dates. We therefore conclude that the awards of prejudgment interest should be affirmed (with the exception of the interest on the $620,000 award, since the propriety of that damage award must be redetermined on remand).
We also affirm each of the attorney's fee awards questioned by appeal or cross appeal with three exceptions. First, we reverse the award requiring payment of fees by Faye Hurley who was not a party to the contract creating the partnership. Contractual provisions for attorney's fees must be strictly construed. Fairways Royale Ass'n v. Hasam Realty Corp., 428 So.2d 288 (Fla. 4th DCA 1983). We also reverse the award of a fee of $135,000 from the partnership assets in recognition of the contribution of appellees' counsel in creating a common fund and the award of a fee of $50,000 to the Estate of William H. Davis made on the same basis.
The common fund rule "permits the award of fees `from a fund or estate which has been benefited by the rendering of legal services.'" Fidelity and Casualty Co. of New York v. O'Shea, 397 So.2d 1196, 1198 (Fla. 2d DCA 1981) (citation omitted). Before the rule may apply, five prerequisites must be met:
1. The existence of a fund over which the court has jurisdiction and from which fees can be awarded;
2. The commencement of litigation by one party which is terminated successfully;
3. The existence of a class which received, without otherwise contributing *108 to the lawsuit, substantial benefits as a result of the litigation;
4. The creation, preservation, protection or increase of the fund as a direct and proximate result of the efforts of counsel for that party;
5. A reasonable relationship between the benefit established and the fees incurred.
Id. It appears that requirements one, two, four, and five are met in the instant case; however, in referring to requirement three in its order, the trial court (apparently inadvertently) omitted the portion which mandates "[t]he existence of a class which received [substantial benefits] without otherwise contributing to the lawsuit... ." In the instant case, such a class does not exist. All of the parties to the partnership agreement participated in the lawsuit and were represented by counsel. It would be inequitable to require them, after paying fees to separate counsel, to also pay appellees' counsel out of their shares of the partnership assets. It is obvious that the common fund rule contemplates that the other parties benefitted have not incurred additional expense in obtaining separate representation.
Further, Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Ritchey, 394 So.2d 1057 (Fla.2d DCA 1981), indicates that the rule should apply only "in the absence of contract or statute," id. at 1058 n. 2, and in the instant case there is a contractual provision for recovery of attorney's fees.
As to all other issues raised by appeal or cross appeal, we affirm.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
ANSTEAD and DELL, JJ., concur.