662 So.2d 361 (1995)
Ramiro PEREZ, Individually and as Co-Personal Representative of the Estate of Lillian Perez, Appellant,
v.
GEORGE, HARTZ, LUNDEEN, FLAGG & FULMER, Appellee.
No. 94-1048.
District Court of Appeal of Florida, Third District.
June 21, 1995.
Rehearing Denied August 2, 1995.
*362 Roger A. Bridges, Coral Gables, for appellant.
George, Hartz, Lundeen, Flagg & Fulmer, Charles George and Esther E. Galicia, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and JORGENSON and GREEN, JJ.
PER CURIAM.
Ramiro Perez ("Perez") and appellee George, Hartz, Lundeen, Flagg & Fulmer ("George, Hartz") both moved for final summary judgment for an award of attorneys' fees with the probate court below. This is an appeal from the court's order granting final summary judgment and awarding the law firm of George, Hartz $166,666.00 in legal fees for services rendered in obtaining a $500,000.00 settlement for Lidia Moreno ("Moreno") and Perez, the surviving parents of Lillian Perez, deceased minor, and denying Perez's motion for summary judgment for fees. For the reasons which follow, we reverse in part the order under review insofar as it permits George, Hartz to recover any attorneys' fees from Perez and affirm the denial of attorneys' fees to counsel for Perez pursuant to their contingency fee agreement.
Lillian Perez was killed in an automobile accident on December 19, 1991, when the Nissan 300ZX in which she was a passenger burst into flames upon impact with another car. The driver of the Nissan and two other passengers, all minors, were also killed. At the time of this accident and at all times material hereto, Lillian's parents, Moreno and Perez were divorced from each other.
After the accident, Lillian's father (Perez) retained an attorney, Lawrence Allen ("Allen") to represent him in an action against Nissan. Perez's retainer agreement with Allen, dated December 21, 1991, provided, among other things, that Allen would receive as compensation for his services 33 1/3% of any recovery up to one million dollars through the time of filing of an answer or the demand for appointment of arbitration.
Lillian's mother, Moreno, retained the George, Hartz firm to represent her individually in a wrongful death action against Nissan Motors. On January 6, 1992, Moreno signed a written contingency fee agreement with the George, Hartz firm which provided, inter alia, that the firm would receive as compensation for its services, 33 1/3% of any recovery up to one million dollars prior to the filing of the lawsuit.[1]
According to Allen, the George, Hartz firm contacted him and offered to share responsibilities for the investigation, development and litigation costs of the case, but that after this initial contact, he was unsuccessful in obtaining information or in meeting with anyone from the firm. George, Hartz, on the other hand, contends that Allen was invited to a meeting on January 21, 1992, of all plaintiffs' counsel, as well as a meeting with the medical examiner's office, but that Allen did not attend the meetings nor did he contact the firm to inquire about the status of the case until February 19, 1993. George, Hartz admits that it did not respond to this written inquiry by Allen due to Allen's apparent lack of activity and interest in the case as evidenced by Allen's failure to:
1) hire an investigator;
2) photograph the scene or vehicles involved in the accident;
3) inspect the vehicles;
4) contact or interview the witnesses, police officer or medical examiner;
5) research whether the Nissan 300ZX had been the subject of a crashworthy test;
6) put Nissan on notice of his representation;
7) call or retain experts;
8) move to preserve the vehicle as evidence; or
9) review industry standards.
*363 Pre-suit mediation between Nissan Motors and all of the plaintiffs' attorneys except Allen began on March 19, 1993.[2] Nissan initially offered $325,000 per family. This amount was not accepted. George, Hartz told Moreno that it would settle for any offer in excess of $325,000 and that any settlement would be subject to attorneys' fees and the claims of Perez as Lillian's surviving father. Settlement negotiations reconvened on May 5, 1993, again without Allen. Nissan offered $500,000 to each family, which was accepted.
Thereafter, an associate of George, Hartz contacted Allen to ask for a waiver from Perez so that an estate could be set up for Lillian naming Moreno as the sole personal representative. Charles George later faxed a letter to Allen stating that the firm had settled the case on behalf of both parents and that the firm was entitled to a fee from Perez because it was the procuring cause of the settlement. The letter also indicated that the firm would ask for a one-third contingency fee on the entire $500,000 settlement. Allen refused the waiver and disputed George, Hartz' claims for attorneys' fees from Perez.
On May 6, 1993, George, Hartz filed a petition in the probate division for administration of Lillian's estate and sought to name Moreno as personal representative. Moreno also filed a petition asking the court to approve the settlement and to allow the payment of attorneys' fees to George, Hartz. The court appointed both Moreno and Perez as co-personal representatives.
At a subsequent evidentiary hearing, Perez agreed to the amount of the settlement with Nissan Motors and also agreed that a contingency fee of one-third of the $500,000 settlement amount (i.e., $166,666) as attorneys' fees was reasonable. The parties agreed to argue the issue of entitlement to the attorneys' fee award at a later time. Thereupon, the proceeds, minus attorneys' fees, were equally distributed to Moreno and Perez.
Both parties thereafter moved for final summary judgment for an attorneys' fee award. Perez argued that George, Hartz was entitled to only $83,333 or 33 1/3% of the recovery made by Moreno. Moreno argued that George, Hartz was entitled to the full $166,666 as the procuring cause of the settlement. After hearing the arguments of counsel and reviewing the pleadings and transcripts of prior proceedings, the court granted Moreno's motion for summary judgment and awarded George, Hartz the entire $166,666.00 as attorneys' fees. Finding no controlling rule of the Florida Bar, or caselaw, the court awarded the fees on the basis of section 768.26, Florida Statutes (1993).[3]
Contrary to the trial court's ruling, we find that there is a Florida Bar rule which directly controls this case. R. Regulating Fla. Bar 4-1.5(f)(2) is very specific in its requirement for a signed contract between a client and attorney or law firm when a fee is contingent:
Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibilities to the client for the performance of the services in question as if each *364 were partners of the other lawyer or law firm involved... .
George, Hartz is not entitled to a fee from Perez because at no time did Perez sign a contract with George, Hartz, for legal services nor did Perez agree to any formal affiliation between his counsel (Allen) and the George, Hartz firm. Without such a signed contract, George, Hartz is not entitled to a fee from Perez, nor is it entitled to participate in any fee to be received by Allen. See Adams v. Montgomery, Searcy & Denny, P.A., 555 So.2d 957 (Fla. 4th DCA 1990).
Even in the absence of a written contract with Perez, George, Hartz nevertheless argues that it is still entitled to all of the attorneys' fees by virtue of the "common fund rule". The common fund rule allows attorneys' fees to be recovered in the absence of a contract or statute when a fund has been created or brought into court, which fund has benefitted from the rendering of legal services. Estate of Hampton v. Fairchild-Florida Constr. Co., 341 So.2d 759 (Fla. 1976); Community Nat'l Bank v. Rishoi, 567 So.2d 1053 (Fla. 5th DCA 1990); Leitman v. Boone, 439 So.2d 318 (Fla. 3d DCA 1983). We disagree.
Before the common fund rule may apply, five prerequisites must be met:
1) The existence of a fund over which the court has jurisdiction and from which fees can be awarded;
2) The commencement of litigation by one party which is terminated successfully;
3) The existence of a class which received, without otherwise contributing to the lawsuit, substantial benefits as a result of the litigation;
4) The creation, preservation, protection or increase of the fund as a direct and proximate result of the efforts of counsel for that party;
5) A reasonable relationship between the benefit established and the fees incurred.
Hurley v. Slingerland, 480 So.2d 104, 107-108 (Fla. 4th DCA), rev. denied 492 So.2d 1335 (Fla. 1986). We find that the common fund rule offers no support to George, Hartz because litigation was never commenced in this case (i.e., a complaint was never filed). Under these circumstances, the common fund rule can not apply. Fidelity & Casualty Co. of New York v. O'Shea, 397 So.2d 1196 (Fla. 2d DCA 1981).[4] Additionally, Hurley imposes a further requirement that the benefitted party not be represented by separate counsel. In this case, Perez was represented by separate counsel and had executed a separate written contingency fee agreement with his counsel.
In concluding that it was error for the court to award the George, Hartz firm with an attorneys' fee award from Perez, we hasten to point out that Allen is also not entitled to receive one-third of Perez's recovery pursuant to the terms of his contingency fee agreement. The record before us makes it abundantly clear that Perez's recovery in this case came solely as the result of the efforts and labor of attorneys other than his own. Since Allen was not the procuring cause of the settlement proceeds for his client, we find that an $83,333.00 attorneys' fee award to Allen for his nominal and inconsequential labor in this case would clearly be excessive. See The Florida Bar v. Rood, 633 So.2d 7 (Fla. 1994) (ten percent contingency fee for work performed on appeal was excessive where appeal never proceeded past notice of filing). Hence, under Rule 4-1.5, Rules Regulating the Florida Bar, we find that the provision in the contingency fee agreement permitting Allen to recover one-third of Perez's settlement proceeds must be rendered unenforceable. Therefore, we affirm the trial court's denial of Allen's motion for summary judgment for an award of attorneys' fees pursuant to the terms of his contingency fee agreement with Perez.
Accordingly, on remand, we direct the trial court to (1) award the George, Hartz firm 33 1/3% of the proceeds received by Moreno as attorneys' fees pursuant to their contingency fee arrangement; (2) ascertain and award a reasonable attorneys' fee to Allen commensurate with his labor on behalf of Perez in the Nissan matter; and (3) place all remaining *365 undistributed funds into the estate of the deceased minor. Finally, we would point out that Perez should obtain new counsel to represent him in any future proceedings since this decision has the potential of creating a conflict of interest between Perez and Allen.
Reversed in part; affirmed in part; and remanded with instructions.
NOTES
[1] The surviving parents of the other victims also retained counsel to pursue wrongful death claims against Nissan Motors.
[2] Allen was given no notice of these settlement negotiations until after their completion. Indeed, counsel for Nissan testified that during these negotiations, he did not know that Allen represented Perez and he assumed that the George, Hartz firm was authorized to settle the claim for both Moreno and Perez.
[3] Section 768.26, proves that:

... attorneys' fees and other expenses of litigation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards.
[4] For the same reason we find that section 768.26, Florida Statutes does not apply. There was no action for wrongful death filed or litigated in this case.