619 So.2d 267 (1993)
PALM BEACH SAVINGS & LOAN ASSOCIATION, F.S.A., ET AL., Petitioners,
v.
Deborah FISHBEIN, Respondent.
No. 78922.
Supreme Court of Florida.
April 1, 1993.
Rehearing Denied June 10, 1993.
*268 Neil P. Linden and David B. Haber, Rollnick, Rosen & Linden, P.A., Coral Gables, for petitioner.
Allan L. Hoffman, West Palm Beach, for respondent.
R. Hugh Lumpkin and Robert A. Cohen, Keith, Mack, Lewis, Cohen & Lumpkin, Miami, amici curiae, for Atty's Title Ins. Fund, Com. Land Title Ins. Corp., First American Title Ins. Co. and Chicago Title Ins. Co.
GRIMES, Justice.
We review Fishbein v. Palm Beach Savings & Loan Association, 585 So.2d 1052 (Fla. 4th DCA 1991), based on conflict with La Mar v. Lechlider, 135 Fla. 703, 185 So. 833 (1939), and Sonneman v. Tuszynski, 139 Fla. 824, 191 So. 18 (1939). We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution.
In October of 1984, Lawrence Fishbein acquired a house in Palm Beach. He took title in his own name, assumed an existing mortgage on the house, and also executed a purchase money mortgage. The following year, Mr. Fishbein, joined by his wife Deborah, executed another mortgage on the house in which the existence of the prior mortgages was acknowledged. Mr. and Mrs. Fishbein lived in the house for several years.
In March of 1988, Mr. Fishbein borrowed $1,200,000 from Palm Beach Savings & Loan Association (bank) and secured the debt with a mortgage on the house. Despite its knowledge that Mr. and Mrs. Fishbein were then engaged in dissolution proceedings, the bank permitted Mr. Fishbein to obtain his wife's signature on the mortgage without requiring her to sign the document in the bank's presence. Unknown to either Mrs. Fishbein or the bank, Mr. Fishbein forged his wife's signature to the mortgage. Approximately $930,000 of the loan proceeds was applied directly to the payment of the three existing mortgages and taxes on the property. The remaining sum was used by Mr. Fishbein for other purposes.
In August of 1988, Mr. and Mrs. Fishbein entered into a property settlement agreement which provided that Mr. Fishbein would buy his wife a $275,000 home and pay her $225,000 and that she would give up any interest in the Palm Beach house. As collateral for his promises, Mr. Fishbein gave his wife's attorney a quit-claim deed conveying the Palm Beach house to Mr. and Mrs. Fishbein. He represented that the house was free and clear of liens except those claimed by his mother and sister. Mrs. Fishbein then moved out of the Palm Beach house, and the parties *269 were divorced. However, Mr. Fishbein failed to buy Mrs. Fishbein a new house or to pay her the promised money. In the meantime, the mortgage on the Palm Beach house went into default, and the bank commenced foreclosure proceedings. Mrs. Fishbein moved back into the Palm Beach house, and Mr. Fishbein was incarcerated. Finally, the judge in the dissolution proceeding set aside the property settlement agreement for fraud in the procurement and awarded Mrs. Fishbein the Palm Beach house nunc pro tunc.
In the foreclosure proceeding, the bank and Mrs. Fishbein stipulated that her only interest in the Palm Beach house at the time of the bank's loan was a homestead interest. Following the trial, the judge ruled that Mrs. Fishbein had not abandoned her homestead interest in the house and that the mortgage could not be foreclosed against the house. However, the judge permitted the bank to have an equitable lien on the house to the extent that its funds were used to satisfy the preexisting mortgages and taxes. The judge stayed any foreclosure sale on the equitable lien for six months to permit Mrs. Fishbein to try to make a private sale of the house.[1]
The Fourth District Court of Appeal upheld the ruling that the property remained Mrs. Fishbein's homestead and was not subject to foreclosure by the bank. However, in a split decision, the court reversed the imposition of the equitable lien because Mrs. Fishbein was innocent of wrongdoing. The court reasoned that equitable liens may only be imposed against homestead real property where the beneficiary of the homestead protection is guilty of fraudulent or otherwise egregious conduct.
Article X, section 4 of our constitution provides in pertinent part:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead... .
In light of this provision and the fact that Mrs. Fishbein never signed the mortgage, the bank does not assert in this Court that its mortgage may be foreclosed against the Palm Beach house. The bank argues, however, that because its loan proceeds were used to satisfy the prior liens, it stands in the shoes of the prior lienors under the doctrine of equitable subrogation. Thus, the bank argues that it has the same rights to enforce a lien against the homestead property as the prior lienholders. Mrs. Fishbein argues that the bank's equitable position cannot be sustained because its claim does not fall within the language of the exceptions in article X, section 4.
In the seminal case of Jones v. Carpenter, 90 Fla. 407, 417, 106 So. 127, 130 (1925), this Court permitted the trustee of a bankrupt bread company to have an equitable lien against the house of the company's former president which had been improved by funds embezzled from the company. While explaining the nature of equitable liens, the Court cited Capen v. Garrison, 193 Mo. 335, 92 S.W. 368 (1906), for the proposition that the doctrine of equitable liens followed the doctrine of subrogation and that they "are applied only in cases where the law fails to give relief and justice would suffer without them." Jones, 90 Fla. at 413, 106 So. at 129. In rejecting the defense that the lien could not be imposed on a homestead, we observed that:
[W]hile this court has repeatedly held that organic and statutory provisions relating to homestead exemptions should be liberally construed in the interest of the family home, they should not be applied so as to make them an instrument of fraud or imposition upon creditors.
Id. at 415, 106 So. at 130. Clearly, it could not be said that the lien imposed in that case fell within the literal language of the constitution which excepted from homestead protection against creditors only "the *270 payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same." Art. X, § 1, Fla. Const. (1885).[2]
Thereafter, in La Mar, the Lechliders advanced money to put an addition on the La Mars' house upon the understanding that they would receive an interest in the house and that the two families would live there together. 135 Fla. at 704, 185 So. at 834. When Mr. La Mar repudiated the Lechliders' claim, a suit ensued, resulting in the imposition of an equitable lien on the homestead. Id. at 707, 185 So. at 835. In affirming the judgment, we noted:
It is true, as contended by defendant herein, that the Jones case, supra, is based upon some direct, immediate, willful and flagrant fraud; however, it is authority for the proposition that a lien might arise which may be enforced against the homestead, even though it is not in specific terms included in the constitutional provision.
Id. at 710, 185 So. at 836.
In Sonneman, 139 Fla. at 825, 191 So. at 19, the plaintiff advanced money to the defendant from time to time to do house-keeping and other domestic services for him with the expectation that the defendant would perform his agreement to support her for the remainder of her life. She lived in the defendant's house but was forced to leave after he married. The court imposed a $1700 equitable lien on the defendant's homestead, even though only $500 of the plaintiff's money had been used in improving the property. Id. at 831-32, 191 So. at 21. Obviously, the Court believed that the equitable circumstances of that case fell within the spirit of the exceptions to the constitutional exemption of homestead property. See also Craven v. Hartley, 102 Fla. 282, 135 So. 899 (1931); Ryskind v. Robinson, 302 So.2d 427 (Fla. 4th DCA 1974).
Thus, it is apparent that where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of article X, section 4. However, the court below was not so concerned with the constitutional language as it was with its belief that an equitable lien could not be imposed because Mrs. Fishbein was not a party to the fraud. Yet, there was no fraud involved in either La Mar or Sonneman. In those cases, the equitable liens were imposed to prevent unjust enrichment. Moreover, in both cases the homestead interest of the spouse of the party whose conduct led to the unjust enrichment was also subject to the equitable lien.
In reaching his conclusion in the instant case, the trial judge stated in the final judgment:
The Plaintiff has clearly shown fraud on the part of Mr. Fishbein in obtaining the loan although no fraud by Mrs. Fishbein has been shown. Under these circumstances, I find that the Plaintiff should have an equitable lien on the property to the extent that its loan proceeds were used to pay the preexisting mortgage which had attached the homestead and the unpaid taxes. While Palm Beach Savings could have been more prudent in handling the closing and such prudence may have avoided the fraud, I do not believe that any such negligence should be a bar to an equitable lien. Palm Beach Savings' mistake, if any, was one of neglect not one of active misfeasance. Additionally, the signature which they relied upon was supported by the attestation of two witnesses and the seal of a notary. Lastly, the homestead would have been liable for these preexisting mortgages and taxes if the Palm Beach Savings' loan had not been procured. Thus, if an equitable lien attaches, Mrs. Fishbein stands in no worse position than she stood in prior to the fraudulent mortgage.
There is competent and substantial evidence to support the finding that Mrs. Fishbein stands in no worse position than she stood before the execution of the mortgage. *271 When the bank made its loan, one of the prior mortgages was already overdue. Mr. Fishbein testified that by that time he had no other assets which could be used to pay off the preexisting liens, and Mrs. Fishbein testified that she had no funds with which to pay them. Of course, Mrs. Fishbein should not be made to suffer because the bank was not more careful in ensuring that her signature on the mortgage was genuine. This is why the bank can make no claim against the property for the $270,000 not used to benefit the homestead. On the other hand, Mrs. Fishbein is not entitled to a $930,000 windfall.[3] The homestead exemption is intended to be a shield, not a sword.
We quash the decision below to the extent that it denies the bank the equitable lien imposed by the trial judge and remand with directions to affirm the trial court's judgment.
It is so ordered.
OVERTON, McDONALD and HARDING, JJ., concur.
SHAW, J., dissents with an opinion, in which BARKETT, C.J., and KOGAN, J., concur.
SHAW, Justice, dissenting.
The Florida constitution clearly sets forth the homestead exemption and its three exceptions, which this Court has consistently held must be strictly construed. The majority opinion rewrites the Constitution to embrace a fourth exception, i.e., claims that it perceives to be within the "spirit of the exception." I am disinclined to have the Court impose an equitable lien on homestead in clear violation of the constitution.
In the recent case of Butterworth v. Caggiano, 605 So.2d 56 (Fla. 1992), we quoted with approval the following language from Olesky v. Nicholas, 82 So.2d 510, 513 (Fla. 1955):
We find no difficulty in holding that the Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision itself... .
Caggiano, 605 So.2d at 60 (emphasis deleted). Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925), and La Mar v. Lechlider, 135 Fla. 703, 185 So. 833 (1939), were cited as examples of the Court imposing an equitable lien where proceeds from fraud or reprehensible conduct were used to invest in, purchase, or improve the homestead:
All the cases cited by the State where a court has actually imposed a lien on the homestead in question, however, are either factually or legally inapposite. Virtually all of the relevant cases involve situations that fell within one of the three stated exceptions to the homestead provision. Most of those cases involve equitable liens that were imposed where proceeds from fraud or reprehensible conduct were used to invest in, purchase, or improve the homestead.
Caggiano, 605 So.2d at 60 n. 5.
The majority's reliance upon Sonneman v. Tuszynski, 139 Fla. 824, 191 So. 18 (1939), is misplaced. In Sonneman, the person against whom the lien was imposed had used money and services he obtained from the plaintiff to acquire and maintain the homestead property, a constitutionally commanded exception to the homestead exemption.
The majority opinion completely ignores the fact that this Court recently rejected the exception to the constitutional homestead guarantee which it today embraces. Public Health Trust v. Lopez, 531 So.2d 946 *272 (Fla. 1988). In Lopez we rejected the equitable argument that the exemption provided a windfall to the beneficiaries at the expense of the just demands of creditors, observing: "The homestead protection has never been based upon principles of equity, but always has been extended to the homesteader and, after his or her death, to the heirs whether the homestead was a twenty-two room mansion or a two-room hut and whether the heirs were rich or poor." Id. at 951 (citation omitted).
The majority opinion moreover ignores the holding of Wilhelm v. Locklar, 46 Fla. 575, 35 So. 6 (1903). There, N.L. Langford had purchased a homestead from a third party, paying for it with cash and a $1,000 note that was payable over time. Before the note matured, Langford decided to pay it off by borrowing $1,000 from Irvin Locklar, who offered Langford more advantageous terms. Locklar loaned the money to Langford knowing that Langford would use it to pay off the original purchase money note. The issue presented was whether the loan from Locklar to Langford was "an obligation contracted for the purchase of property," an exception to the constitution's homestead exemption that would have allowed Locklar to execute a lien on the homestead. Id., 46 Fla. at 576, 35 So. at 6. This Court held it was not. Applying a "strict construction," we said that even though the original purchase money note came within the exception to the homestead exemption, the subsequent loan from Locklar, effectively refinancing the original debt, was an entirely different contract. Id., 46 Fla. at 578, 35 So. at 6-7. Thus, the Locklar loan did not amount to a contract to purchase the homestead, despite the fact that both the lender and the borrower knew the money would be used to pay off the purchase money note.
Similarly here, the Fishbein homestead was purchased in 1984, at which time Mr. Fishbein assumed an existing first mortgage and gave a second mortgage. Four years later, after the Fishbeins executed a third mortgage, Mr. Fishbein borrowed the $1.2 million at issue, using a portion of the money to pay off the preexisting mortgages. The bank claims that it is entitled to a lien for the portion of the $1.2 million loan used to pay off the preexisting debt. Just as in Wilhelm, the loan did not amount to a contract to purchase the homestead, despite the fact that both the lender and the borrower knew that some of the money would be used to pay off the preexisting debt.
I would adhere to the Court's long-standing precedents and approve the result reached by the district court.
BARKETT, C.J., and KOGAN, J., concur.
NOTES
[1] Mrs. Fishbein had testified that the house had been appraised at $1,800,000.
[2] The wording of the homestead exemption in the 1885 constitution differed slightly from that contained in our present constitution, but there was no substantive difference.
[3] As noted by the trial judge during closing arguments:

The reason that the bank would have to assert an equitable lien, as I understand it, is that they paid off a debt that otherwise would have to be paid off on this house. And that Mrs. Fishbein is going to be in effect winning the lottery if she walks off with the two-million dollar house with no lien on it, when it would have had at least an $850,000 debt on it.
Mrs. Fishbein's counsel later responded to this observation by stating:
Then it's our position, Judge, that the wife should win the lottery in this case, because it's not her unclean hands that started this. It's the bank's. They can't wash them off.