767 So.2d 587 (2000)
RADISON PROPERTIES, INC. and Ahmad Nader Beydoun, Appellants,
v.
FLAMINGO GROVES, INC., a Florida corporation, Elias Kanaan, Allen R. Greenwald, Jill F. Greenwald and City National Bank of Florida, Appellees.
Nos. 4D99-1540, 4D99-3194.
District Court of Appeal of Florida, Fourth District.
September 13, 2000.
*588 Gerald V. Walsh of Gerald V. Walsh, P.A., Coral Springs, for appellants.
Edmund O. Loos III and William Berger of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Fort Lauderdale, for appellees Greenwald and City National Bank.
DELL, J.
Radison Properties, Inc. and Ahmad Nader Beydoun ("Nader") appeal from a final judgment and an amended final judgment of foreclosure. They contend that section 692.01, Florida Statutes (1995), does not apply to appellees, Allen R. and Jill F. Greenwalds' mortgage, that appellee, Elias Michael Kanaan, did not have apparent authority to mortgage the property, that in the absence of a valid mortgage, the Greenwalds are not entitled to an equitable lien on the property, and that costs and legal fees should not have been awarded. We reverse and remand.
On April 24, 1992, Gerald Walsh, an attorney, incorporated Radison Properties, Inc. for Nasser Beydoun ("Nasser"). All rights to the 200,000 shares of authorized, but unissued, stock were assigned to Nasser. He named Elias Michael Kanaan president and secretary of Radison. On April 28, 1992, Nasser transferred four parcels of real property by deed to Radison.[1] A sales contract between Nasser and Radison provided for a purchase price of $648,471.00. Kanaan claimed he paid Nasser $648,471.00 for the property. However, Nader (Nasser's brother) stated that the funds only went from "Nasser's left pocket to his right pocket."
In June 1993, Radison's annual report indicated that Kanaan was a director, president, and secretary of Radison. On April 6, 1994, Nasser called a special meeting of the Radison shareholders (of which he was the only one) and replaced Kanaan with Robert H. Davis, Jr. as the sole director of the corporation. Kanaan testified that he did not receive notice of the meeting. Immediately thereafter, a board of directors meeting was conducted. Nasser, Walsh, and Davis attended the meeting. Davis, as sole director, named himself president and secretary, and named Walsh assistant secretary. Kanaan was not furnished with notice of this meeting. Nader testified that Kanaan was notified by letter written in Arabic that he was no longer president of the company.
On June 20, 1995, Nasser Beydoun died. Nader was the beneficiary of his estate and is the current shareholder of Radison. In 1996, Walsh filed Radison's annual report indicating the following changes: Davis and Walsh were removed as officers and Davis was removed as director; Nader was named president and director; Mustafa Beydoun (Nader's son) was named secretary, treasurer, and director; and Wassim Beydoun (Nader's other son) was named director and vice-president. Kanaan maintains that as far as he knew, he was and still is the owner, president, and secretary of Radison.
In March, 1997, Nader went to the county tax collector to pay taxes on the Radison property. After he could not locate property under the name Radison, he discovered that on April 22, 1996, the property had been conveyed from Radison to Flamingo Groves, Inc. (Kanaan's company) by a deed signed by Kanaan as president of Radison. He also discovered that the taxes had been paid and that there was a *589 mortgage on the property from Flamingo to the Greenwalds. Kanaan testified that he transferred the property from Radison to Flamingo and that Flamingo mortgaged the property to the Greenwalds for $150,000.[2]
As part of the mortgage transaction, $39,141.15 was paid from the Greenwalds' mortgage proceeds to the Broward County Tax Collector to satisfy unpaid delinquent taxes and liens on the property. On February 7, 1997, the Greenwalds filed a foreclosure action against Kanaan and Flamingo. On April 2, 1997, Radison filed a Motion to Intervene and attached its own Complaint against Flamingo and Kanaan for declaratory relief, common law theft, fraud, and conspiracy. The trial court granted the motion to intervene and consolidated the two cases.
After a non-jury trial, the trial court issued a Final Judgment finding, in pertinent part, that the property was originally conveyed from Nasser to Radison by a series of deeds dated April 28, 1992, that on April 22, 1996, the property was conveyed from Radison to Flamingo by a deed signed by Kanaan as president of Radison and that at the time of the conveyance, Kanaan was not the president of Radison, and that no consideration passed from Flamingo to Radison for the conveyance of these deeds. The trial court also found it unworthy of belief that Kanaan gave Nasser $648,000 cash for the property. The trial court further found that on October 31, 1996, the Greenwalds received a mortgage and security agreement covering the four parcels of the property from Flamingo, but that as between Radison and Flamingo, the deeds were invalid. The trial court concluded, however, that the Greenwalds were without notice of the invalidity of the deeds between Radison and Flamingo and were good faith purchasers for value in accepting a mortgage on the four parcels of property from Flamingo because Kanaan had apparent authority from Radison and Nasser to sign the note and mortgage. The court concluded that the mortgage and security agreement in favor of the Greenwalds was a valid encumbrance against the properties and that the foreclosure on the properties could proceed because the Greenwalds were protected by section 692.01, Florida Statutes. Subsequently, the trial court entered an Amended Final Judgment of Foreclosure in favor of the Greenwalds.
First, appellants contend that the trial court erred when it granted a judgment of foreclosure in favor of the Greenwalds against Radison's property. They argue that the court erroneously interpreted section 692.01, Florida Statutes, because Kanaan was not an officer of Radison when he deeded the property to Flamingo. Section 692.01, Florida Statutes, provides in its entirety as follows:
Conveyances by corporations.Any corporation may execute instruments conveying, mortgaging, or affecting any interest in its land by instruments sealed with the common or corporate seal and signed in its name by its president or any vice president or chief executive officer. Assignments, satisfactions, or partial releases of mortgages and acquittances for debts may be similarly executed by any corporate officer. No corporate resolution need be recorded to evidence the authority of the person executing the deed, mortgage, or other instrument for the corporation, and an instrument so executed shall be valid whether or not the officer signing for the corporation was authorized to do so by the board of directors, in the absence of fraud in the transaction by the person receiving it. In cases of fraud, subsequent transactions with good faith purchasers for value and without notice of the fraud shall be valid and binding on the corporation.
*590 Appellants correctly point out that because the entire section of 692.01 refers to actions by either a president, vice president, chief executive officer, or any corporate officer, that the last sentence, referring to fraud, must also deal with actions taken by an officer. Both parties cite Ocean Bank of Miami v. Inv-Uni Inv. Corp., 599 So.2d 694 (Fla. 3d DCA 1992); Prezioso v. Cameron, 559 So.2d 423 (Fla. 4th DCA 1990); and Snead v. United States Trucking Corp., 380 So.2d 1075 (Fla. 1st DCA), rev. denied, 389 So.2d 1116 (Fla.1980). In each of these cases, the fraudulent act involved an action taken by someone in the position of an officer and signing the document in that capacity. See Ocean Bank, 599 So.2d at 695; Prezioso, 559 So.2d at 424; and Snead, 380 So.2d at 1075-76. However, Kanaan was no longer the president of Radison when he transferred the property to Flamingo, nor when he executed the mortgages to the Greenwalds. Therefore, section 692.01, Florida Statutes (1995), does not apply under the facts of this case.
Next, appellants contend that the trial court erred in applying the concept of apparent authority to the mortgage transaction. They argue that neither Radison nor Nasser cloaked Kanaan with apparent authority to execute the deed from Radison to Flamingo, nor to execute the mortgage from Flamingo to the Greenwalds.
[T]he Florida Supreme Court stated that the principle of apparent authority embraces the following three elements: 1) a representation by the principal, 2) reliance on that representation by a third person, and 3) a change of position by the third person in reliance on the representation. Clearly, the reliance of a third party on the "apparent authority" of a principal's agent must be reasonable and rest in the actions of or appearances created by the principal, and "not by agents who often ingeniously create an appearance of authority by their own acts."
Security Union Title Ins. Co. v. Citibank (Florida), N.A., 715 So.2d 973, 974-75 (Fla. 1st DCA) (citations omitted), rev. dismissed, 728 So.2d 200 (Fla.1998). Here, the record does not contain evidence in support of the trial court's conclusion that Kanaan had apparent authority to execute the deed from Radison to Flamingo or to execute a mortgage from Flamingo to the Greenwalds. The record does, however, contain evidence that as early as 1994, Kanaan was no longer a director or an officer of Radison. Furthermore, the Greenwalds did not rely upon such alleged apparent authority in accepting the mortgage from Flamingo.
We therefore hold that the deed from Radison to Flamingo was void because Kanaan lacked actual authority under section 692.01 to execute the deed. We also hold that the record does not support the trial court's finding that Kanaan had apparent authority to encumber the property by the mortgage from Flamingo to the Greenwalds. We need not reach appellants' argument that the Greenwalds were not good faith purchasers for value. "The recording of a void or forged deed is legally insufficient to create a legal title, and affords no protection to those claiming under it." McCoy v. Love, 382 So.2d 647, 648 (Fla.1979). For the reasons discussed above, the trial court's final judgment granting foreclosure in favor of the Greenwalds must be reversed.
Appellants also contend that because the Greenwalds were not obligated to pay taxes when they paid $39,141.15 to the Broward County Tax Collector to satisfy delinquent taxes and tax liens on the property, they were volunteers and should not recoup the amounts paid. Appellees argue that in the absence of a valid mortgage, they are entitled to the imposition and foreclosure of an equitable lien based upon the doctrine of equitable subrogation. They assert that they advanced the funds to pay the taxes in conjunction with their first mortgage on the property, and therefore, their actions were not voluntary because they had to be sure that any pre-existing *591 liens on the property were extinguished.
The doctrine of equitable subrogation is designed to apply where the claimant satisfied an obligation of another and then stands in the shoes of the satisfied creditor. The doctrine is founded on established principles of equity to prevent an unjust forfeiture, on the one hand, and a windfall amounting to unjust enrichment, on the other.
In re Forfeiture of United States Currency in the Amount of Ninety-One Thousand Three Hundred Fifty-Seven and 12/100 Dollars ($91,357.12), 595 So.2d 998, 1000 (Fla. 4th DCA), rev. denied, 601 So.2d 552 (Fla.1992). In Forfeiture of $91,357.12, the appellant loaned the property owner $140,000, and of that amount, $128,892 was used to satisfy two prior mortgages. Id. at 999. After the closing, counsel forwarded the documents to the clerks office, but they disappeared. After execution of the mortgage, but before the loss was discovered, the city seized the secured property. The trial court determined that the seizure was not subject to the appellant's mortgage because he had not perfected his lien. Id. This court reversed summary judgment as to appellant's claim for equitable subrogation, stating that "[t]he mortgage proceeds were used to pay off two prior recorded mortgages which would have remained liens on the property but for the refinancing. Here, there is also the additional equity that those liens were not satisfied of record at the time of the seizure." Id. at 1000.
In Palm Beach Savings & Loan v. Fishbein, 619 So.2d 267 (Fla.1993), Lawrence Fishbein acquired a house in Palm Beach in October, 1984, taking title in his own name and assuming an existing mortgage. In 1985, he and his wife executed another mortgage that acknowledged the existence of the prior mortgages. In March, 1988, Mr. Fishbein borrowed $1,200,000 from the bank and secured the debt with a mortgage on the house. Despite the bank's knowledge that the Fishbeins were engaged in dissolution proceedings, the bank permitted Mr. Fishbein to obtain his wife's signature on the mortgage without requiring her to sign the document in the bank's presence. Id. at 268. Unknown to the bank or to Mrs. Fishbein, Mr. Fishbein forged her signature to the mortgage. Approximately $930,000 of the proceeds were applied to pay the three existing mortgages and taxes on the property. In the dissolution proceeding, the judge set aside a property settlement agreement and awarded Mrs. Fishbein the house nunc pro tunc. Id.
In the foreclosure proceeding, the trial judge granted an equitable lien on the house in favor of the bank to the extent that its funds were used to satisfy the preexisting mortgages and taxes. The bank argued on appeal that because its loan proceeds were used to satisfy the prior liens, it stands in the shoes of the prior lienors under the doctrine of equitable subrogation, and therefore, has the same rights to enforce a lien against the homestead property as the prior lienors. The supreme court stated,
There is competent and substantial evidence to support the finding that Mrs. Fishbein stands in no worse position than she stood before the execution of the mortgage. When the bank made its loan, one of the prior mortgages was already overdue.... Of course, Mrs. Fishbein should not be made to suffer because the bank was not more careful in ensuring that her signature on the mortgage was genuine. This is why the bank can make no claim against the property for the $270,000 not used to benefit the homestead. On the other hand, Mrs. Fishbein is not entitled to a $930,000 windfall....
Id. at 270-71.
Here, the substantial and competent evidence establishes that a portion of the funds loaned to Flamingo were used to pay delinquent taxes on the property. The Greenwalds' payment of the taxes extinguished tax liens that would have otherwise been superior to their mortgage. They stand in the shoes of the satisfied creditor, the Broward County Tax Collector, *592 and have a lien equal to the amount of taxes paid plus interest from November, 1996. As in Fishbein, appellants are not entitled to a windfall by having their delinquent real estate taxes paid from the proceeds of the loan from the Greenwalds to Flamingo. We therefore hold that the Greenwalds are entitled to an equitable lien on the property in the amount of $39,141.15 plus interest.
In their final point on appeal, appellants assert that the trial court erred when it assessed costs and fees against Radison in favor of the Greenwalds. They argue that Flamingo and Kanaan were the mortgagors, not Beydoun and Radison. We agree. The mortgage states that the mortgagor shall pay or reimburse the mortgagee for costs and expenses, including reasonable attorneys fees. Neither Beydoun nor Radison was a party to the mortgage.
We reverse the final judgment and amended final judgment and remand for entry of a judgment awarding the Greenwalds an equitable lien for property taxes paid plus interest and for such further proceedings as may be consistent herewith.
REVERSED and REMANDED.
GUNTHER and STEVENSON, JJ., concur.
NOTES
[1] The property at issue consists of five separate deeds for five separate parcels. Four deeds were conveyed on April 22, 1992, and one deed was conveyed on May 10, 1996. With regard to the foreclosure action, the only parcels subject to the Greenwalds' mortgage are the four that were conveyed on April 22, 1992.
[2] The actual loan amount was $165,000; however, the disbursed amount was $150,000.