WARNER, J.
 

 Tribeca Lending Corporation timely appeals a Final Judgment of Foreclosure of an Equitable Lien, claiming that there are certain defects in the final judgment which need to be corrected. Real Estate Depot cross-appeals the final judgment, arguing primarily that the trial court erred in entering summary judgment in Tribeca’s favor and conceding that some defects appear in the summary final judgment. We agree that summary judgment was properly entered. We reverse only to correct the defects in the final summary judgment regarding the parties whose interests are being foreclosed, as well as the court’s retention of jurisdiction over the sale proceeds.
 

 In 2004 and 2005, Henry and Rochelle Thornton were facing financial difficulties and were in default under their existing first mortgage on their home. The first mortgagee of the property, Colonial Mortgage Company, brought a foreclosure action against the Thorntons, which ultimately resulted in the entry of an agreed final judgment of foreclosure.
 

 The foreclosure sale relative to the Colonial Mortgage was scheduled to occur on September 29, 2005. However, on the day before the foreclosure sale, Henry Thornton contacted Real Estate Depot and entered into a sale and leaseback on the property in an effort to save the home from foreclosure. It is sufficient for the purposes of this appeal to note that the Thorntons executed a Special Warranty Deed conveying title to their home to Real Estate Depot. Real Estate Depot paid the Thorntons a total of $2,500 at the time of the transaction.
 

 The next day at the foreclosure sale an individual successfully bid on the property on behalf of Real Estate Depot. However, rather than actually paying the entire amount to purchase the property at the foreclosure sale, Real Estate Depot’s plan was to simply forfeit the deposit on its bid. This tactic had the effect of preventing a foreclosure sale, at least temporarily. The forfeited deposit was then applied to the Colonial Mortgage.
 
 [1]
 

 After Real Estate Depot effectively prevented the property from being sold at the foreclosure sale, Henry Thornton learned
 
 *261
 
 that the property was still in foreclosure and that a new foreclosure sale date had been set. Believing that Real Estate Depot did not comply with their agreement, Mr. Thornton sent Real Estate Depot a facsimile in which he attempted to rescind the agreement. Although Mr. Thornton stated that he was rescinding the agreement, he did not return any money to Real Estate Depot.
 

 Subsequently, a quit-claim deed was recorded in the Broward County public records. The quit-claim deed purported to convey the property from Real Estate Depot back to Henry and Rochelle Thornton. The deed showed that Alan Klasfeld, the principal of Real Estate Depot executed the deed. After learning about the deed, Real Estate Depot recorded an Affidavit of Fraudulent Deed in the public records, in which Alan Klasfeld attested that he did not sign the quit-claim deed and stated that his signature on the deed was a forgery. Around the time the deed was recorded, Mrs. Thornton also declared bankruptcy.
 

 After Mr. Thornton attempted to rescind his agreement with Real Estate Depot, he sought to refinance the property through Tribeca Lending Corporation. Mr. Thornton testified that he did not advise Tribeca that there was any challenge to his ownership of the property, nor did he discuss with Tribeca the events that occurred between him and Real Estate Depot or about the deeds involving Real Estate Depot. Ultimately, the Thorntons executed a note and mortgage in the amount of $321,300 in favor of Tribeca. The proceeds of the Tribeca Mortgage were used to satisfy the $265,942.00 balance due under the Colonial Mortgage.
 

 In 2006, Real Estate Depot brought suit against multiple defendants, including the Thorntons and Tribeca, in an action for declaratory relief, damages, and to quiet title to the property. In its amended complaint, Real Estate Depot sought to quiet title against all defendants who may claim an interest in the property. It sought damages against only the Thorntons, for slander of title, and the notary on the quitclaim deed, for violating statutory requirements regarding notarization.
 

 Tribeca answered and filed an Amended Cross-claim and Counterclaim, seeking either to foreclose on its mortgage or, alternatively, to obtain an equitable lien on the property. Real Estate Depot answered Tribeca’s counterclaim and raised affirmative defenses of unclean hands and equitable estoppel, claiming that Tribeca “had real or effective notice of the fraud being perpetuated [sic] by the forged deed of Defendants, Henry Thornton and Rochelle Thornton due to numerous irregularities in the closing....”
 

 Tribeca moved for summary judgment as to its counterclaim for the imposition and foreclosure of an equitable lien on the property. It claimed that it was entitled to an equitable lien against the property to the extent that its loan proceeds were used to satisfy the preexisting Colonial Mortgage, a fact which was undisputed. Further, Tribeca asserted that Real Estate Depot’s affirmative defenses failed to allege the type of behavior which would amount to unclean hands, arguing that the “unclean hands” defenses raised in the answer were actually in the nature of allegations of negligence. Real Estate Depot filed a response in opposition to the motion for summary judgment, arguing that there were genuine issues of material fact remaining.
 

 After a hearing on Tribeca’s summary judgment motion, the trial court entered a Final Judgment of Foreclosure of an Equitable Lien. The final judgment awarded Tribeca an equitable lien against the property in the amount of $265,942, the
 
 *262
 
 amount of the Tribeca loan used to satisfy the Colonial Mortgage. The final judgment stated that upon the filing of the Certificate of Sale, the defendants would be foreclosed of all estate or claim in the property. This language had the effect of foreclosing the interest of all
 
 defendants,
 
 including Tribeca, without foreclosing the interest of Real Estate Depot. In addition the final judgment awarded post-judgment interest to Tribeca, but did not award pre-judgment interest. Finally, the final judgment provided that “[j jurisdiction of this action is retained to enter further orders ..., including, without limitation, determination of conflicting claims to the proceeds, Plaintiffs damages claims against Defendant, Tribeca Lending Corporation, deficiency judgment, etc., as may be appropriate.” This appeal and cross-appeal follow.
 

 Considering first the merits of the final summary judgment, Real Estate Depot argues that genuine issues of material fact exist which preclude summary judgment. In particular, Real Estate Depot argues that 1) there are outstanding claims of “dirty hands” that were not refuted; and 2) equitable subrogation is improper where Tribeca knowingly accepted a mortgage in violation of an automatic stay in bankruptcy. Tribeca contends that those defenses were legally insufficient to negate foreclosure of the equitable lien for the amount of the original first mortgage which it had satisfied.
 

 Because its own mortgage was tainted by the forged deed, Tribeca sought foreclosure only on the basis of an equitable lien. “[A]n equitable lien ‘is a right granted by a court of equity, arising by reason of the conduct of the parties affected which would entitle one party as a matter of equity to proceed against’ certain property.”
 
 Epstein v. Epstein,
 
 915 So.2d 1272, 1274-75 (Fla. 4th DCA 2005) (quoting
 
 Gables Racing Ass’n v. Persky,
 
 148 Fla. 627, 6 So.2d 257, 263 (1942)). Equitable liens may be based upon considerations of estoppel or to prevent unjust enrichment.
 
 Plotch v. Gregory,
 
 463 So.2d 432, 436 n. 1 (Fla. 4th DCA 1985). Similarly, the doctrine of equitable subrogation, a twin remedy to the equitable lien, is designed to apply where the claimant satisfied an obligation of another and then stands in the shoes of the satisfied creditor.
 
 See Radison Props., Inc. v. Flamingo Groves, Inc.,
 
 767 So.2d 587, 591 (Fla. 4th DCA 2000). Equitable subrogation will be granted to prevent unjust enrichment even though the party seeking it was negligent, as long as there is no prejudice.
 
 Suntrust Bank v. Riverside Nat’l Bank of Fla.,
 
 792 So.2d 1222, 1227 n. 3 (Fla. 4th DCA 2001). Furthermore, we have recognized that a refinancing lender is equitably subrogated to the priority of the first mortgage even where it has actual knowledge of an intervening lien.
 
 Id.
 
 at 1225.
 

 As it is an equitable remedy, a party seeking such a lien must do so with clean hands.
 
 Epstein,
 
 915 So.2d at 1275. The clean hands doctrine “applies not only to fraudulent and illegal transactions, but to any unrighteous, unconscientious, or oppressive conduct by one seeking equitable interference in his own behalf.”
 
 Dale v. Jennings,
 
 90 Fla. 234, 107 So. 175, 180 (1925). Nonetheless, a party asserting unclean hands “must prove that he was injured in order for the unclean hands doctrine to apply.”
 
 McCollem v. Chidnese,
 
 832 So.2d 194, 196 (Fla. 4th DCA 2002).
 

 The foregoing principles are illustrated in
 
 Palm Beach Savings & Loan Ass’n, F.S.A. v. Fishbein,
 
 619 So.2d 267 (Fla.1993), which allowed the imposition of an equitable lien against homestead property in favor of a lender, where the debtor husband fraudulently obtained a loan and used the loan to satisfy three preexisting
 
 *263
 
 mortgages on the homestead property without the knowledge of the wife. Mr. Fishbein borrowed $1,200,000 from Palm Beach Savings & Loan Association and secured the debt with a mortgage on the house. Despite its knowledge that Mr. and Mrs. Fishbein were then engaged in dissolution proceedings, the bank permitted Mr. Fishbein to obtain his wife’s signature on the mortgage without requiring her to sign the document in the bank’s presence. Unknown to either Mrs. Fish-bein or the bank, Mr. Fishbein forged his wife’s signature to the mortgage. Mr. Fishbein then satisfied the existing mortgages on the property and used the remaining sum for other purposes. After Mr. Fishbein failed to comply with a dissolution agreement, Mrs. Fishbein moved back into the home. In the meantime, the mortgage went into default and the bank initiated foreclosure proceedings.
 

 Because Mrs. Fishbein never signed the mortgage, the bank did not take the position that its mortgage could be foreclosed against the home. However, the question presented to our supreme court in
 
 Fish-bein
 
 was whether an equitable lien could be imposed on homestead real property where Mrs. Fishbein was innocent of wrongdoing. Our supreme court held than even though Mrs. Fishbein was not a party to the fraud, an equitable lien could be imposed to prevent unjust enrichment:
 

 Of course, Mrs. Fishbein should not be made to suffer because the bank was not more careful in ensuring that her signature on the mortgage was genuine. This is why the bank can make no claim against the property for the $270,000 not used to benefit the homestead. On the other hand, Mrs. Fishbein is not entitled to a $930,000 windfall.
 

 Id.
 
 at 271.
 

 Similar to
 
 Fishbein,
 
 Real Estate Depot is not entitled to a windfall by having the Colonial Mortgage paid off with Tribeca’s funds. It was undisputed that the proceeds of the Tribeca loan were used to satisfy the preexisting Colonial Mortgage. An equitable lien is necessary to prevent Real Estate Depot from being unjustly enriched by virtue of Tribeca’s loan to the Thorntons.
 

 The record also conclusively refutes the affirmative defense of Real Estate Depot that Tribeca had unclean hands. At most, the affirmative defense alleges negligence on the part of Tribeca in failing to discover the recorded affidavit from Mr. Klasfeld regarding the forged quit-claim deed. Mr. Thornton testified that he did not tell Tribeca about the Real Estate Depot transaction. The pleadings and record facts do not show any trickery, fraud, or oppressive conduct by Tribeca which would bar Tribeca from obtaining an equitable lien.
 

 Even assuming Tribeca had actual knowledge that Real Estate Depot was claiming the deed was a forgery, the unclean hands defense still fails as a matter of law on this record. By analogy, in
 
 Suntrust,
 
 we explained that a refinancing lender is still entitled to be equitably sub-rogated to the priority of the mortgage it satisfied even where it had knowledge of the intervening lien. Similarly, Real Estate Depot’s interest in the property was subordinate to the mortgage of Colonial. When Tribeca satisfied that lien, it was entitled to step into the shoes, so to speak, of Colonial’s priority over Real Estate Depot’s interest. Regardless of what Tribeca knew, Tribeca’s conduct did not harm Real Estate Depot to that extent. In fact, Mr. Klasfeld admitted in his deposition that Tribeca’s satisfaction of the Colonial Mortgage would result in a windfall to Real Estate Depot if Tribeca did not receive an equitable lien.
 

 
 *264
 
 Alternatively, Real Estate Depot alleged that the Tribeca mortgage on the Thornton home was a nullity because of the automatic stay provision of Mrs. Thornton’s pending bankruptcy. The automatic stay under bankruptcy law operates as a stay of “any act to create, perfect, or enforce any lien against property of the estate.” 11 U.S.C. § 362(a)(4). However, the Thorntons’ homestead in this case was property that was exempt from the bankruptcy estate.
 
 See
 
 11 U.S.C. § 522(b)(3)(A). Real Estate Depot has not shown that there was any violation of the automatic stay.
 

 Thus, the court correctly entered summary judgment for Tribeca on foreclosure of its equitable lien based upon the Colonial Bank mortgage. The final judgment contains a defect, however, which the trial court should correct on remand. It included boilerplate language stating that upon the filing of the Certificate of Sale, the
 
 defendants
 
 would be foreclosed of all estate or claim in the property. As Real Estate Depot agrees, this is inaccurate. Because Tribeca was itself a defendant in Real Estate Depot’s declaratory judgment action, the language could be construed to foreclose its own interest in the property. In addition, because Real Estate Depot was a plaintiff and coMuier-defendant, it was not included in the foreclosed interests.
 

 We reject Tribeca’s claim that the court erred in failing to award prejudgment interest on the equitable lien amount, because the claim was never raised and thus was waived. Tribeca never filed a motion for rehearing or a motion to address the prejudgment interest issue. In fact, there is no indication in the record that Tribeca ever even raised the issue of its entitlement to prejudgment interest prior to this appeal.
 
 See Hi-Shear Tech. Corp. v. United Space Alliance, LLC,
 
 1 So.3d 195, 204 (Fla. 5th DCA 2008) (holding that where the trial court’s failure to award pre-judgment interest was not raised until after the time had expired for filing a motion for rehearing pursuant to Rule 1.530(b), the issue was waived).
 

 Finally, Tribeca claims that the court erred by requiring that the proceeds of any judicial sale be retained pending the resolution of the “conflicting claims” to them. To the extent that the court’s order may be interpreted as withholding from Tribeca that portion of the sale proceeds which would satisfy the equitable lien being foreclosed, we agree that the court erred. It had already determined that Tribeca was entitled to an equitable lien and that Real Estate Depot’s affirmative defenses to that lien were conclusively refuted. Therefore, Tribeca’s right was superior to any other claimant, and it was entitled to the proceeds of sale to the extent that they satisfied that lien. Further, Real Estate Depot does not have any pending claims against Tribeca for damages. Even if it did, the court could not retain the proceeds in advance of any determination of damages.
 
 See, e.g., Konover Realty Assocs., Ltd. v. Mladen,
 
 511 So.2d 705, 706 (Fla. 3d DCA 1987).
 

 Based on the court’s imposition of the equitable lien, Tribeca has first priority as to the proceeds of the judicial sale, regardless of any conflicting claims to any remaining proceeds. Therefore, the court’s final judgment has the practical effect of restraining proceeds to which Tribeca is entitled. This was error as to the application of the sale proceeds to the equitable lien. To the extent that the sale proceeds exceed the amount of the lien plus interest, those proceeds may lawfully be held pending further orders of the court.
 

 We affirm the final summary judgment except as to the correction of the parties foreclosed and the retention of jurisdiction
 
 *265
 
 over the sale proceeds to the extent that they satisfy Tribeca’s equitable lien. We reverse on those two issues.
 

 Affirmed in part; reversed in part and remanded for correction of judgment.
 

 TAYLOR and MAY, JJ., concur.
 

 [1]
 

 .
 
 See
 
 § 45.031(3), Fla. Stat.