# Third District Court of Appeal

**State of Florida**

Opinion filed September 2, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-520
Lower Tribunal No. 09-56724
_____

**Wells Fargo Bank, N.A., etc.,**
Appellant/Cross-Appellee,

vs.

**Maria Clavero, et al.,**
Appellees/Cross-Appellants.

An Appeal from the Circuit Court for Miami-Dade County, Jacqueline Hogan Scola, Judge.

Lerman & Whitebook and Carlos D. Lerman (Hollywood), for appellant/cross-appellee.

Nathan Clark, for appellees/cross-appellants.

Before SUAREZ, C.J., and ROTHENBERG and SALTER, JJ.

SALTER, J.

This is an appeal and cross-appeal arising from a lender's[1] attempt to foreclose a residential mortgage executed by only one of the four owners of the home when the loan was closed. Applying the legal doctrine of ratification, the trial court entered a foreclosure judgment against all four of the owners on the basis of an equitable lien. The trial court stayed enforcement of that judgment, however, as to two of the owners for as long as the property remains their homestead.

The successor lender, Wells Fargo as trustee, appealed the stay of enforcement, while all four owners cross-appealed the entry of the foreclosure judgment against them. We affirm in part, reverse in part, and remand for modification of the final judgment. We do so as a matter of law and based on a record that is extraordinary—even for the excesses of the Miami residential lending market at the time. We also do so with deference to the veteran trial judge's findings of fact and conscientious efforts to bring some order to a loan closed without regard to normal underwriting or title examination procedures.

I.    Factual and Procedural History

As of 2005, appellees and cross-appellants Elvio and Gliceria Clavero (the "Parents") owned a small home in Miami-Dade County that they had purchased over

---

[1] The original lender was Washington Mutual Bank, not Wells Fargo Bank, N.A., as Trustee.

30 years earlier (the "3789 Property"). In October of that year, they signed and recorded a quitclaim deed conveying their interests in the 3789 Property to "MARIA

CLAVERO and HUBERT CLAVERO HUSBAND AND WIFE AND ELVIO CLAVERO and GLICERIA CLAVERO HUSBAND AND WIFE joint tenants with

rights of survivorship [sic]." Hubert Clavero was the Parents' adult son, and at the time, Maria Clavero was Hubert's wife. Hubert and Maria had their own home and did not live in the 3789 Property.

Over two months after recordation of the quitclaim deed, Maria signed the papers for a $201,500.00 mortgage loan on the 3789 Property, in favor of Washington Mutual Bank. She was identified as the only "Borrower," and as a "married woman." She initialed each page of the promissory note and mortgage. The other three owners of record did not sign the note or mortgage.

The Parents received none of the proceeds of the mortgage loan on the 3789 Property, and they never made a payment on the loan. None of the loan proceeds were invested in or used to pay taxes or other obligations relating to the 3789 Property.

In mid-2009, Wells Fargo filed a foreclosure complaint alleging a payment default and breach effective as of February 1, 2009. The complaint identified all

3

four of the record owners—the Parents, Hubert, and Maria—as defendants. In 2010, Hubert and Maria were divorced; as part of their marital settlement agreement, they re-conveyed their interests in the 3789 Property to the Parents.

The foreclosure case proceeded to a bench trial in January 2014. Maria (by then known as Maria Castellon) testified that the Parents executed the October 2005 quitclaim deed to their home so that Maria could collateralize a loan for another property that was to be used for a daycare business. She testified, however, that the Parents held no interest in, and received no financial benefit from, the other property or the daycare business. She told the Parents that she would be responsible for the loan.

Maria testified that she was the only person among the four record owners of the 3789 Property who had good credit. The Parents testified that they added their son and Maria to the title for estate planning purposes, but the trial court rejected that testimony, finding Maria's testimony credible. No one from Washington Mutual Bank testified regarding the origination or closing of the loan—or regarding the startling omission of three of the four owners from the mortgage—but the trial court observed that "everybody was hoodwinking everybody."

Applying the legal principle of ratification, the trial court entered a final judgment of foreclosure against the 3789 Property, but on the basis of an equitable lien. The final judgment stayed any sale of the property "until the property is no

longer the homestead of Elvio/Glicera Clavero." The court also ordered the Parents to begin paying their property taxes, and to pay past property taxes to the extent they are able. Wells Fargo moved for rehearing, and the court amended the final judgment to require the Parents to report to the court every six months on the homestead status of the 3789 Property. This appeal and cross-appeal followed.

II. Analysis

As the successor to the loan made by Washington Mutual Bank, Wells Fargo acquired a promissory note and recorded mortgage executed by only one of the four titleholders. The record contains no document whereby the Parents subjected their homestead, the 3789 Property, to that mortgage. Wells Fargo's ability to force a sale of the Parents' homestead property,[2] therefore, turns on the applicability of the principle of ratification. Ratification of a mortgage by a non-signatory property owner has been upheld in Florida in two distinct types of cases: (a) when the nonsignatory owner has received the benefit of the mortgage loan proceeds; or (b) when the non-signatory owner has authorized an attorney-in-fact to execute the mortgage on behalf of the owner. We consider these categories in turn.

_____

[2] Art. X, § 4(c), Fla. Const.

5

A.    Receipt of Benefit

The non-signatory's receipt of mortgage loan proceeds, or receipt of a benefit from the application of those funds, may cure the failure to sign the mortgage as a matter of equitable subrogation, see Palm Beach Sav. & Loan Ass'n v. Fishbein, 619 So. 2d 267 (Fla. 1993), or ratification, see Fleet Fin. & Mortg., Inc., 707 So. 2d 949 (Fla. 4th DCA 1998).

In the present case, however, neither the Parents nor the 3789 Property received a financial benefit from the loan proceeds.  It is undisputed that all of the loan proceeds were utilized by the sole signatory to start the day care business.  The Parents were not owners or employees of that business.

We find no Florida case extending the principle of ratification to a parent's expression of a general intention to help a family member secure a loan for purposes of benefiting the family member.  At oral argument, this type of indirect benefit was advanced by Wells Fargo as a worthy rationale for binding the Parents to the mortgage loan procured by Maria.  We see no legal basis for extending the legal principle of ratification in such an instance, and on this record.   The Washington Mutual loan circumvented the institutional lending process whereby the property owners/mortgagors sign documents informing them of the terms of the transaction, including the amount of the loan procured, federal Truth-in-Lending[3]

---

[3]  15 U.S.C. §§ 1601-1665 and 12 C.F.R. §§ 226.1-.1002.

6

rights, interest rates, monthly payment amounts, and subjection of the homestead to the mortgage loan—all in a transaction in which the non-signatory owners themselves and the mortgaged property have received no benefit.

Wells Fargo's reliance on the case of Citron v. Wachovia Mortgage Corp., 922 F.Supp. 2d 1309 (M.D. Fla. 2013), is unwarranted. In that case, Mr. Citron was a Florida-licensed mortgage broker. Mrs. Citron worked with him in a mortgage company, and the two had brokered some 47 mortgage loans for the lender that originally loaned money to the Citrons, World Savings. Wachovia Mortgage was the successor by merger to World Savings. The Citrons obtained hundreds of thousands of dollars of loan proceeds and invested those funds in a home later conveyed to their family trust.

The Citrons sued Wachovia Mortgage in an attempt to rescind the loan for Truth-in-Lending violations and other alleged defects in the loan documents. The trial court denied any such relief because (among a number of facts in the record) the Citrons had received and had not promptly disgorged all of the direct benefits of the loan. Additionally, the Citrons had made monthly payments on the loan for over a year after learning of the alleged defects in the loan documents. "Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable." 922 F.Supp. 2d at 1321 (quoting Still v. Polecat Indus., Inc.,

7

683 So. 2d 634 (Fla. 3d DCA 1996)).  In the present case, the Parents neither received loan proceeds, nor otherwise benefited from the application of those proceeds, nor made any monthly payments, nor acquired full knowledge of the material details of the mortgage loan.

B.    Attorney-in-Fact

Section 695.01(1), Florida Statutes (2005), provides protection to creditors and purchasers who accept a conveyance or lien signed by an attorney-in-fact on behalf of a property owner (and then recorded), so long as the power of attorney itself is also recorded before the accrual of rights by "creditors or subsequent purchasers for a valuable consideration and without notice."  Washington Mutual Bank could have required, but did not, such a power of attorney as a condition to the loan.  And such a power of attorney is only effectual to the extent of the specific powers granted.  Him v. Firstbank Fla., 89 So. 3d 1126 (Fla. 5th DCA 2012).

Execution of the mortgage by an agent "previously unauthorized" may also be subject to ratification in certain instances.  Branford State Bank v. Howell Co., 102 So. 649 (Fla. 1924).  In that case, however, the Supreme Court of Florida held: "No rule of law is better settled than this:  That the ratification of the act of an agent previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts."  Id. at 650.  In the present case, there was no

8

evidence that Maria (or anyone else) informed the Parents or Hubert of all of the material facts relating to the Washington Mutual Bank loan and mortgage.

### III. Proceedings on Remand

We affirm the trial court's findings that (a) Maria Castellon signed the promissory note, obtained the loan proceeds, and remains liable under the terms of the promissory note,[4] (b) the defective Washington Mutual Bank promissory note and mortgage did not subject the Parents' homestead property to the lien of the mortgage and to sale, and (c) Wells Fargo does have an equitable lien to the extent of disbursements for property taxes and reasonable costs of insurance paid by Wells Fargo during the pendency of the foreclosure action, recoverable when the 3789 Property is no longer the Parents' homestead.

We reverse that portion of the final judgment imposing and foreclosing an equitable lien for the principal or interest on the loan made by Washington Mutual Bank, with respect to the ownership interest of the Parents in the 3789 Property. On remand, the trial court should clarify that the Parents and Hubert are not personally liable for unpaid principal and interest due under the promissory note signed only by Maria.

---

[4] The original promissory note was surrendered by Wells Fargo and marked "cancelled." On remand, the trial court should enter a final judgment against Maria Castellon, individually, for the principal and interest due under the note. The trial court may also hear and rule upon any motions for attorney's fees relating to collection of sums due under the note.

9

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.