PER CURIAM.
Wilma Jane Crawford ("Wilma"), Cody Crawford, and Brooke Crawford (collectively, *1276 the "Appellants") appeal the trial court's final judgment granting claims for mortgage foreclosure, equitable subrogation, and equitable lien, asserted by Federal National Mortgage Association ("Appellee"), and dismissing Appellants' counterclaims. We affirm in part, reverse in part, and remand for the entry of a corrected final judgment consistent with this opinion.
Joseph Crawford ("Joseph") obtained sole title to certain real property located in Flagler County. In 1999, Joseph, as "a single man," executed a mortgage on the subject real property in the amount of $ 80,000. He married Wilma in early 2000, and Wilma made the property her homestead. However, Joseph did not add Wilma to the deed for the property. In 2001, Joseph and Wilma, as husband and wife, executed a second mortgage on the property in favor of Bank of America, securing a home equity line of credit.
More than five years later, Joseph applied for another loan from Bank of America, indicating on the application that he was unmarried, despite being married to Wilma at the time. In October 2006, Bank of America loaned Joseph $ 97,850.00 consistent with his request. In return, Joseph executed a note and mortgage ("refinance mortgage"), again indicating that he was "a single man." Of the $ 97,850.00 in loan proceeds, separate payments of $ 6,533.52 and $ 10,595.74 were disbursed to Bank of America, satisfying the balance owed on the Bank of America home equity loan, and $ 33,006.32 was disbursed to the then-holder of the note secured by the original mortgage for the property, thereby satisfying the original mortgage in its entirety. Joseph also received a cash disbursement of $ 44,576.31.
Joseph died in January 2014, and the last payment on the loan was made in June 2014. After notifying the "Estate of Joseph Crawford" that the refinance mortgage loan was in default due to the lack of payments, Bank of America assigned the refinance mortgage to Appellee who filed a foreclosure action and notice of lis pendens. Subsequently, Appellee filed a Third Amended Complaint for mortgage foreclosure, equitable subrogation, imposition of and foreclosure upon an equitable lien, and mortgage reformation.
The case proceeded to a bench trial. Appellee moved the refinance mortgage loan payment history into evidence which demonstrated that the last payment was made in June 2014, the total unpaid principal amount at the time of trial was $ 87,678.95, the unpaid interest was $ 18,403.56, and the total amount of escrow advances was $ 6,990.01.
Following trial, the court entered a final judgment in favor of Appellee, finding it had proven the requisite elements of a foreclosure action and was entitled to foreclose on the refinance mortgage. The trial court also concluded that Appellee was entitled to relief via equitable subrogation, and to thereby "stand in the shoes" of the prior mortgagees due to the refinance mortgage loan proceeds being used to satisfy the prior loans. Additionally, the trial court ruled that Appellee was entitled to the imposition of an equitable lien upon the property to prevent Appellants from being unjustly enriched by the satisfaction of the prior loans and by Appellee's continuing payment of taxes and hazard insurance for the property after the default on the refinance loan.
The trial court also reasoned that Wilma received both direct and indirect benefits from the cash disbursement and therefore found Appellee entitled to the full amount of the refinance mortgage as part of the equitable lien. Additionally, the trial court dismissed Appellants' counterclaims, ruling that each failed to state a cause of action.
*1277 Finally, the trial court awarded the Appellee $ 117,648.32 in damages, which included prejudgment interest. This appeal follows.
The parties raise numerous issues on appeal and cross-appeal. We affirm in all respects except for two issues raised by Appellants. We agree with Appellants that the final judgment incorrectly awards Appellee a mortgage foreclosure and incorrectly applies funds to the equitable lien that did not benefit the homestead. We write to address these issues.
I. The trial court erred by entering a judgment for mortgage foreclosure against Wilma's homestead but did not err in imposing an equitable lien on the property.
This issue presents a question of law that is to be reviewed de novo. See Aills v. Boemi, 29 So.3d 1105, 1108 (Fla. 2010). Appellants argue that the trial court erred by entering a final judgment of mortgage foreclosure, noting that Wilma never executed the refinance mortgage. We agree.
The Florida Constitution provides that "[t]he owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift." Art. X, § 4(c), Fla. Const. Florida courts have consistently interpreted this constitutional provision as requiring spousal joinder in the execution of a mortgage on homestead property in order for the mortgage to encumber the property and be enforceable in foreclosure, even where only the signatory spouse is an owner of record on the property's deed. See Vera v. Wells Fargo Bank, N.A., 178 So.3d 517 (Fla. 4th DCA 2015).
Wilma did not sign the refinance mortgage, and the subject property was Wilma's homestead. Thus, the trial court erred in finding that Appellee was entitled to foreclose on the refinance mortgage.
However, a trial court is authorized to impose an equitable lien on a homestead if necessary to prevent unjust enrichment. See Palm Beach Sav. & Loan Ass'n v. Fishbein, 619 So.2d 267 (Fla. 1993). The evidence at trial fully supports the court's determination that some of the loaned funds associated with the refinance mortgage benefited the homestead and that imposition of an equitable lien was necessary to prevent unjust enrichment. Thus, the trial court did not err in imposing an equitable lien on the homestead.
II. The trial court erred in finding the full amount of the refinance mortgage loan to be subject to the equitable lien.
This issue involves questions of both fact and law. We review the trial court's findings of fact to determine whether they are supported by competent substantial evidence, but we review questions of law de novo. See St. Vincent's Med. Ctr. v. Mem'l Healthcare Grp., Inc., 967 So.2d 794, 799 (Fla. 2007).
Appellants argue that the trial court miscalculated the amount secured by the equitable lien because it included the $ 44,576.31 disbursed directly to Joseph that did not benefit the homestead. The Appellee counters by claiming that the trial court properly found that Wilma would be "unjustly enriched" since she had limited access to a portion of the funds and the homestead indirectly benefited from the disbursement. We agree with Appellants.
A trial court may impose an equitable lien to prevent unjust enrichment, but only for funds used to benefit the homestead. See Fishbein, 619 So.2d at 270-71. Thus, it is not appropriate to include in an equitable lien funds disbursed to the signatory spouse that were "not used to *1278 benefit the homestead" but, instead were used by the signatory spouse "for other purposes." Id. at 271.
At trial, Appellee produced no evidence demonstrating that the $ 44,576.31 disbursed to Joseph either directly or indirectly benefited the homestead. The Appellee's speculation that the funds may have been used to make payments on the loan or provide upkeep to the property does not justify the inclusion of the cash disbursement in the equitable lien. Therefore, it was error for the trial court to include the funds disbursed directly to Joseph in the amount of the equitable lien.[1]
Next, we address whether the equitable lien amount should be reduced based upon Joseph's monthly payments. Appellants argue that payments made by Joseph from the inception of the loan to the date of default exceeded the $ 50,135.58 disbursed to satisfy the prior loans, and should therefore extinguish the equitable lien. We reject this argument as it would undermine the principles of equity which support imposition of the equitable lien. Instead, the payments made by Joseph from 2006 to 2014 should be applied proportionally, reflecting the percentage of the refinance loan which was used to satisfy the prior loans. Since 51 percent[2] of the loan was used to benefit the homestead, 51 percent of each payment made by Joseph may be applied toward the equitable lien.
Based upon the foregoing, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Upon remand, the trial court shall enter a final judgment of foreclosure on the equitable lien consistent with this opinion. The corrected judgment shall include damages in the amount of the refinance mortgage loan disbursed to satisfy the prior loans less any applied payments, all escrow advances, and any prejudgment interest.[3]
AFFIRMED in part; REVERSED in part; and REMANDED with instructions.
GROSSHANS, SASSO,[4] JJ., and WILSON, T., Associate Judge, concur.

Although evidence at trial may support a finding that Wilma had limited access to a portion of the cash disbursement, there was no evidence that these funds benefited the homestead.

We derived this percentage by applying the following formula: ($ 50,135.58 [amount disbursed to satisfy prior loans] ÷ $ 97,850.00 [refinance mortgage loan amount] ) × 100% = 51%, rounded to the nearest units of %.

In calculating prejudgment interest, the trial court shall compute the interest that accrued by applying payments when they were actually made rather than applying all the payments as a lump sum on the date of trial.

Judge Sasso did not participate in oral argument but reviewed the case in its entirety.